J. OLIVER DENNIS ET AL., APPELLANTS, V. THE OMAHA
NATIONAL BANK, APPELLEE.

1. **Revivor of Judgment.** The county court has authority to revive a judgment rendered by it.

2. ———: JURISDICTION OF COUNTY COURT. Where the transcript of a judgment rendered in a county court is filed in the district court of the same county, all proceedings should thereafter be held in such district court, but in the absence of a statute prohibiting the court in which the judgment was rendered from proceeding further in the case, a judgment of revivor rendered in such court will not be invalid.

3. **Homestead:** CASE STATED. The wife of one D. possessed a homestead in her own right in the city of O., in this state. In 1877 D., being in embarrassed circumstances, went to the Black Hills to open some mines possessed by him. In the fall of 1878 he returned to this state, and the February following his wife died, leaving a daughter, the child of D., about three years of age. D. then procured a brother-in-law and his wife to move into the house, rent free, and take care of his child, the furniture of D. remaining in the house. D. thereupon returned to the Black Hills, and remained till 1882. While there he exercised the right of suffrage at least once, perhaps three times, but the proof showed that he was there merely for a temporary purpose, and that his actual home was in O., in this state. *Held,* That his right of curtesy in the homestead was not subject to sale on execution—that there was no abandonment of the homestead.

APPEAL from the district court of Douglas county. Heard below before NEVILLE, J.

*George W. Doane,* for appellants.

*Arthur C. Wakeley,* for appellee.

MAXWELL, CH. J.

In January, 1875, two judgments were recovered in the county court of Douglas county by the defendant against

the plaintiff and the Hall Steam Engine Co., one for $139.45, and the second for $129.52, the debt in each case being incurred in 1874. In March, 1879, a transcript of one of the judgments was filed in the district court of Douglas county. In February, 1882, the judgments having become dormant, proceedings to revive the same were instituted in the county court of Douglas county, and the actions revived. Transcripts were thereupon filed in the district court of that county, and executions issued thereon, which were levied on the interest of the plaintiff in lot 2, block 14, in E. B. Smith's addition to the city of Omaha, being his life interest therein as tenant by the courtesy. The plaintiff's interest in said lot was thereafter sold to the defendant under said levy, the sale confirmed, and a deed made to the purchaser. An action of forcible entry and detainer was thereupon brought by the purchaser to obtain possession of the premises, whereupon the plaintiff brought this action to enjoin the prosecution of the said action.

On the trial of the cause the court found the issues in favor of the defendant, and dismissed the action.

The testimony tends to show the following facts: That the lot in question was purchased before the debts on which these judgments were recovered were incurred; that the title to the same was in the name of plaintiff's wife; that a small house was erected on the lot, in which the plaintiff, his wife, and child resided; that the plaintiff was engaged in business in Omaha, but was unfortunate; that about the year 1877 or 1878—the time is not certain—he went to the Black Hills to better his financial condition. He testifies, on cross-examination, " I had some mining interests there, and I thought I could make some money out of them, and went back and tried to do so, as I was embarrassed financially." He returned home the first time in December, 1878. His wife died in the following February. He then procured his brother-in-law, Mr. Viss, and his wife to live in the house in question and take care of his child

during his absence; and in May, 1879, he returned to the Black Hills, where he seems to have remained until 1882, when this action was instituted.

The first objection made by the appellant is that the county court has no authority to revive a judgment. This question was before this court in *Hunter v. Leahy,* 18 Neb., 80, and it was held that the county court, upon proper application, may revive a judgment that has become dormant. And in *Miller v. Curry,* 17 Neb., 321, it was held that the provisions of the code for the revival of judgments apply to actions before justices of the peace. These decisions, in our view, state the law correctly. A court that has authority to render a judgment in the first instance certainly retains the power, where no appeal has been taken, to keep such judgment alive until it is satisfied. The first objection, therefore, is untenable.

2. That a transcript having been filed in the district court, proceedings to revive should have been had in that court. There is great force in the objection of the appellant, and this was the course pursued in *Fox v. Abbott,* 12 Neb., 328. The cause practically having been transferred to the district court, where all the remedies known to the law may be resorted to for the collection of the judgment, it would seem but justice that all proceedings should be had thereafter in that court; but as the statute does not declare that the inferior court is ousted of jurisdiction, we cannot hold that it is, and must therefore hold that the county court had authority to revive the judgments. The second ground of objection, therefore, is not sustained.

3. That the plaintiff had not abandoned his homestead. This, evidently, is the principal question in the case. The right of homestead is governed by the law in force when the debt was incurred. *Dorrington v. Myers,* 11 Neb., 388. *De Witt v. Sewing Machine Co.,* 17 Neb., 533. *McHugh v. Smiley,* Id., 620. The statute in force when this debt was contracted exempted a homestead owned and

occupied by any resident of this state being the head of a family, and declared that the same should be exempt so long as it was owned and occupied by the debtor as such homestead.    In case of the death of the debtor the estate in the homestead descended to the heirs at law or legatees, free from all claims of creditors.    The testimony shows that the plaintiff left his furniture in the house in contro-versy.    He was a widower financially embarrassed.    He went to the Black Hills temporarily, as he testifies, to work his mines, and if possible to better his circumstances.    He seems to have engaged in various kinds of business there, and possessed a ranch.    We do not understand by this that he had anything more than a squatter's claim on the pub-lic lands, as the testimony fails to show anything more than this.    Four witnesses testify that he voted in the county in which he resided at least twice up to the year 1882, and that he was registered as a voter.    This he denies, except as stated on his cross-examination as follows: "Just before I came away there was a lot of roughs came in there from Montana, and we had several cabins broken open and things taken out; and we had no officers and no way of getting hold of them except going ten or twelve miles, and we set a day for a kind of an election to get a constable and justice of the peace, so that we could get hold of them without going so far, and we had a little election, and I voted there just before I came away in 1882."    In regard to the registration he states that the registrar entered his name without his application.    There is no doubt of the general rule that the exercise of the elective franchise is conclusive upon the question of residence.    That is, that a party who has gone into another state or territory cannot be permitted to deny that he is a resident of the place where at the time he has exercised the right of suffrage. This rule, however, when applied to the homestead, nec-essarily must be governed by the facts in each case.    Thus, suppose the wife of a resident of this state possesses a home

therein, in which the family reside, the husband and father could not by going into another state deprive them of this home without their consent by the mere exercise of the right of suffrage in such other state or territory; and particularly is this true if he went there for a merely temporary purpose. Where the homestead right has once become vested by the party entering into possession and enjoying the same for years, such right, as against a debt incurred after the homestead right was acquired, can be divested only by a sale or abandonment. *Dorrington v. Myers*, 11 Neb., 391. In *Stout v. Rapp*, 17 Neb., 469, it is said: "It is evidently the purpose of the statute of this state, as well as others having similar laws, that the homestead exemption shall not be so much for the benefit of the person standing in the position of the head of the family as for the family itself. This has been the holding of the courts with but few exceptions. See Thompson on Homestead Exemptions, §§ 40 and 41." The abandonment that would subject the homestead to sale would be total, without any occupancy under claim of homestead. Now suppose that a wife and family are in possession of a homestead under the statute of 1867, and that the husband and father has removed to another state, the homestead would still be exempt, because, in fact, it was the home of the wife and family. So if the wife should die, but the family should continue to reside therein, it would still partake of the homestead character, and would be exempt. Cases, no doubt, may be found in some of the older states where a narrow construction has been given to the statute, and its beneficent objects in many cases defeated. The statute being remedial in its nature is to receive a liberal construction, so far as may be consistent with good faith to creditors, to carry it into effect. If the homestead was exempt when the debt was contracted, then no reliance could have been placed by the creditor on that property for the satisfaction of his claim. So long, therefore, as the homestead

is used as such it continues a homestead.   In the case at bar the wife being dead, and the father of the only child in embarrassed circumstances, he procured his deceased wife's sister and her husband to move into his house, rent free, and take care of his child.   The plaintiff's furniture was left in the house.   The arrangement for the care of his daughter evidently was temporary in its nature, as he was hoping and expecting to better his fortune in the Black Hills, and then return to Omaha.   That he regarded as his home, and it certainly was the home of his daughter, the only home that she had ever had.   There was no such abandonment of the homestead, therefore, as would subject it to sale upon execution; and being occupied as a homestead when the sale took place it does not in any manner affect the homestead right.   *McHugh v. Smiley*, 17 Neb., 620–626.   The defendant, therefore, acquired no interest in the premises by the purchase of the plaintiff's right of curtesy.   It follows that the judgment of the district court must be reversed, and judgment will be entered in this court making the injunction perpetual.   We have not discussed the question whether the property in question descended to the daughter upon the death of her mother, free from the claim of curtesy on the part of the plaintiff, for the reason that it is not presented in an issuable form and is immaterial in the case.

JUDGMENT ACCORDINGLY.

THE other judges concur.