SARAH TAGGART, PLAINTIFF IN ERROR, V. JAMES M. FOWLER, SHERIFF, AND THE McCORMICK HARVESTING MACHINE COMPANY, DEFENDANTS IN ERROR.

Husband and Wife: SEPARATE PROPERTY OF WIFE. In an action of replevin instituted by a married woman for the possession of personal property levied upon by the sheriff under execution against her husband, it was shown by uncontradicted evidence that the property in dispute was purchased by and for her, with means furnished by herself, and through the aid of her father, as surety at the bank. It was *Held*, That the property so purchased would not be subject to seizure, upon final process against the husband, even though in the management and use of the property the husband was permitted to have charge of it, in connection with others employed for that purpose, and even though the property was listed for taxation in his name.

ERROR to the district court for Nemaha county. Tried below before APPELGET, J.

*Covell, Polk & Beeson,* for plaintiff in error, cited: *Deck v. Smith,* 12 Neb., 389. *Spellman v. Davis,* 14 Id., 263. *Daniels v. Cole,* 21 Id., 156.

*Stull & Edwards,* for defendants in error.

REESE, CH. J.

This was an action of replevin instituted in the district court of Nemaha county for the possession of three horses which had been levied upon as the property of William A. Taggart, but were claimed by Sarah Taggart, his wife, as owner.

A trial was had to the district court, a jury having been waived, which trial resulted in a finding and judgment in favor of the sheriff, the holder of the execution under which the levy was made. Plaintiff brings the case to this court by proceedings in error.

The only question presented by the record is upon the contention of plaintiff in error that the finding of the district court is not sustained by sufficient evidence.

We have carefully examined all of the testimony introduced upon the trial, and, while it is with reluctance that we would consent to examine the testimony in any case with a view or purpose of reversing the finding of the district court upon the evidence, yet we cannot free ourselves from the impression that in the decision in this case the learned judge of the district court made a mistake in the application of legal principles to the evidence. There is, substantially, no conflict in the testimony of the witnesses, many, if not all, of the leading or important features of the evidence introduced by plaintiff being wholly uncontradicted. We would not be justified in giving the testimony in detail, for the reason that it would extend this opinion to an unwarranted length. We must, therefore, be satisfied with what we conceive to be a fair but condensed statement of the evidence upon a material point of the case.

The first witness called by plaintiff was William A. Taggart, her husband. He testified that plaintiff was his wife; that he had resided in Auburn about seven years; that at one time he was the owner of the property in dispute; that a man by the name of Henry Brown had labored for him until his indebtedness to Brown was in the neighborhood of $400, and that in satisfaction, or part payment, of such indebtedness, he had sold Brown the horses in dispute, together with a wagon and harness; this sale was made in the early part of the year 1884; that Brown took possession of the property, but kept it in Taggart's barn, where it had formerly been, using it in the livery business, he collecting and retaining the proceeds; and that in October, 1886, plaintiff purchased the horses from Brown for $300.

This testimony is corroborated by plaintiff, and to some

extent by her father, Jonas Jones. . It is shown by the testimony of plaintiff, her husband (Taggart), and Jonas. Jones, that plaintiff's father furnished her with a considerable amount of money, for the purpose of enabling her to go into the business of running an omnibus line in Auburn; that soon after her marriage, in 1882, he gave her $50; that in 1883 he furnished her $300, and that subsequently he signed four notes, as surety for her, at the bank, of $200 each, making $800; that substantially all of this money was used by her in the purchase of property, including that in dispute, with which to carry on the business. One of the omnibuses was purchased for $600, a small part of which was paid in cash, the balance having been paid in installments, and most of which was realized from the business. The other omnibus was purchased for $700, on substantially the same terms. It is shown that the money loaned to her by her father, as well as the $800 obtained at the bank, upon her note, signed by him as surety, was obtained for the purpose of investing it in the property necessary to carry on the business. There is nothing in the evidence which, to any considerable extent, contradicts these statements of the three witnesses. It was shown, on the part of the defense, that plaintiff's husband was engaged, to a limited extent, in the transfer business. at Auburn, at or soon after their marriage; that after the purchase of the two omnibuses referred to he continued to have general charge of the business. These witnesses testified that they never saw plaintiff in charge. It was also shown that the property had never been assessed to her by the local assessors; that her husband's name was painted upon each of the vehicles, and there is some proof tending to show that his name was painted upon the sign upon the barn.

While these facts are all competent and proper to be considered in connection with all the circumstances of the case, yet we do not understand that they are sufficient

to absolutely outweigh the uncontradicted testimony that the property did actually belong to plaintiff. The fact that the service or use to which it was put was such as to render it necessary that the labor should be performed by the husband, or some one else employed for that purpose, is not absolutely inconsistent with the theory of the ownership of the property on her part.

There is no doubt but that it is the well-settled law of this and many other states that a married woman may have control of her own property, even through the agency of others, and it be entirely free from liability of seizure for the payment of the husband's debts. The fact that the property was so far in his possession for the purpose of use as to be treated and believed by persons not knowing the facts to be his property, would not make it liable for the payment of his debts, unless she had surrendered her dominion over it to him, allowing it to be treated and held out to the world as his property.

We must accept the testimony of the three witnesses named, all to the same effect, that the money and assistance were furnished plaintiff by her father, as stated by them; that that identical money was invested in the property in dispute, and with which, together with the increase from such use, the property was paid for. If this was true we cannot conceive how it can be made subject to the payment of her husband's debts, unless there was some relinquishment of ownership on her part, or unless the credit had been given upon some conduct or action upon her part which would estop her to deny the ownership and title of her husband. Nothing of this kind appears. As we have said, there is substantially no conflict in the testimony. It is simply a question as to what inference should be legally drawn from the facts stated. We are persuaded that plaintiff established her right to the property to such an extent that, being uncontradicted, the finding should have been in her favor.

· The judgment of the district court must therefore be reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur. ·