SANBORN S. HEWS, APPELLANT, V. C. C. KENNEY ET AL., APPELLEES.

FILED FEBRUARY 6, 1895.   No. 6101.

1. Trusts: TITLE TO WIFE'S LAND HELD BY HUSBAND: CREDITORS' BILL.   In 1882 a husband purchased a lot in the city of Lincoln, in Lancaster county, with the money of his wife, for her, under an agreement between them that the title should be taken in her name.   The deed, however, without the wife's knowledge, was made to the husband and recorded.   In 1884 the wife learned that the title to the lot was of record in her husband's name and requested him to convey it to her according to their agreement.   The husband then made and delivered directly to the wife a deed for the lot.   The husband was advised that this deed was invalid.   It was never recorded, but lost or destroyed.   In 1887 the husband and wife executed a deed of

the lot to one B., for the purpose of having him convey the title
to the wife, which he then did.ʹ This deed the wife delivered to
the husband for record, but he, without her knowledge, withheld
it from the record, and it was lost.  In 1889 B. executed and
delivered to the wife a deed for the lot to take the place of the
deed made by him in 1887.  In 1886, in Richardson county, one
Hews recovered a judgment against the husband, and in 1889
caused a transcript of such judgment to be filed and docketed in
the office of the clerk of the district court of Lancaster county.
The cause of action on which such judgment was based was not
a credit which Hews had given the plaintiff on the faith of his
being the owner of said lot.  In a suit by Hews to subject this
lot to the payment of his judgment, *held*, (1) that the real estate
was the property of the wife and held in trust for her by her
husband; (2) that as Hews had extended no credit to the hus-
band on the faith of the latter's ownership of the lot, and had
not been misled to his injury because the title to said lot was of
record in the husband's name, that it was not liable for his debts.

2. **Fraud.**  Under our statutes fraud is a question of fact and not
of law. (Compiled Statutes, ch. 32, sec. 20.)

3. **Creditors' Bill:** TRUSTS: HUSBAND AND WIFE: ESTOPPEL.
Cases have arisen in which courts of equity have made the prop-
erty of the wife, the title to which was held in trust by the hus-
band, liable for his debts; but these cases are not based upon
the doctrine that the act of the wife in permitting the husband
to carry in his own name and of record the title to her real es-
tate, was a "fraud in law," but upon the doctrine that the wife,
by permitting her husband to keep in his own name the title to
her property, to hold it out to the world as his, to contract debts
on the faith of his being the actual owner of the property, had
estopped herself in equity against the husband's creditors de-
ceived thereby, from claiming the property.

4. **Trusts:** HUSBAND AND WIFE: CREDITORS' BILL.  Where a
husband uses the money of his wife in paying for land, the title
to which he takes in his own name, a trust will arise in favor of
the wife, which a court of equity will protect against the hus-
band's creditors, unless it is made to appear that such creditors
gave the husband credit on the faith of his being the actual
owner of the property of the wife, the title to which was in his
name.

APPEAL from the district court of Lancaster county.
Heard below before TIBBETS, J.

The facts are stated by the commissioner.

*J. H. Broady*, for appellant:

There is no resulting trust, because to prove a resulting trust of the sort pleaded in the answer it must be shown by proof, absolutely clear and satisfactory, that the identical money can be traced into the land while it is the property of the wife. (*Besson v. Eveland*, 26 N. J. Eq., 468; *Glover v. Alcott*, 11 Mich., 470; *Glidden v. Taylor*, 16 O. St., 521; *Humes v. Scruggs*, 94 U. S., 22.)

The conveyance of the land in question cannot be treated as a valid mortgage to secure a debt from the husband to the wife, but must be held a constructive fraud, at least, and void. (*Wake v. Griffin*, 9 Neb., 50; *Roy v. McPherson*, 11 Neb., 197; *Stevens v. Carson*, 30 Neb., 544.)

*Marquett, Deweese & Hall, contra,* in support of an argument in favor of the contention that the case presents an example of a resulting trust, cited: *Ross v. Hendrix*, 15 S. E. Rep. [N. Car.], 4; *Union Nat. Bank v. Harrison*, 16 Neb., 635; *Cresswell v. McCaig*, 11 Neb., 223; 1 Perry, Trusts [2d ed.], sec. 127; *Fillman v. Divers*, 31 Pa. St., 429; *Resor v. Resor*, 9 Ind., 347.

RAGAN, C.

On the 3d day of August, 1885, a cause of action accrued in favor of Sanborn S. Hews against one C. C. Kenney. On the 20th of October, 1886, Hews recovered a judgment against Kenney on said cause of action in the district court of Richardson county, and on the 4th day of May, 1889, a transcript of said judgment was duly filed and docketed in the office of the clerk of the district court of Lancaster county. On the 3d day of June, 1882, one D. B. Alexander and said C. C. Kenney entered into a contract in writing in and by which Alexander agreed to sell and convey to Kenney, when certain payments should be

56

made, the following described real estate, situate in said
Lancaster county, to-wit: The east half of lot 10 of Little
& Alexander's subdivision of lot 63 of S. W. Little's sub-
division of the west half of the southwest quarter of sec-
tion 24, in township 10 north, and range 6 east, of the 6th
P. M. This contract was recorded in the office of the
recorder of deeds of said Lancaster county on the 14th of
June, 1882. On the 3d day of October, 1883, Alexander
and his wife conveyed the said above described real estate
to the said C. C. Kenney by warranty deed, which was
filed and recorded in the office of the register of deeds of
said Lancaster county on November 6, 1883. On the 9th
day of May, 1887, C. C. Kenney and Carrie H. Kenney,
his wife, by their warranty deed of that date conveyed said
real estate to one Blitz G. Kenney, and this deed was filed
and recorded in the office of the recorder of deeds of Lan-
caster county on the 10th of May, 1887. On the 24th day
of June, 1889, said Blitz G. Kenney, by his warranty
deed of that date, conveyed said premises to Mrs. Carrie
H. Kenney, and this deed was filed and recorded in the
office of the register of deeds of Lancaster county on the
27th of June, 1889. In May, 1890, said Hews brought
this suit in the district court of Lancaster county against
said C. C. Kenney, Carrie H. Kenney, his wife, and Blitz
G. Kenney, the object of which suit, so far as the same is
material here, was to have the conveyance of said real
estate made by C. C. Kenney and Carrie H. Kenney, his
wife, to Blitz G. Kenney, and the conveyance made by
Blitz G. Kenney to Mrs. Carrie H. Kenney, set aside and
said real estate decreed to be the property of C. C. Kenney
and liable for the judgment against him owned by said
Hews. It was alleged by Hews in his petition that said
property was in fact the property of C. C. Kenney and
that said conveyances were made without consideration and
for the fraudulent purpose of placing the property of the
said C. C. Kenney out of the reach of his creditors. The

district court found that the real estate in controversy "was purchased by the defendant Carrie H. Kenney in the year 1882 and paid for by her own personal means, and that subsequent to the purchase of said premises the said defendant Carrie H. Kenney cau-ed a building to be erected on said real estate which was paid for from her own personal estate; that the defendant C. C. Kenney never at any time had any interest in or to said real estate  *  *  * that the title to said real estate was taken and held in trust by said defendant C. C. Kenney for the use and benefit of the said defendant Carrie H. Kenney until the year 1887, when the same was conveyed by the said defendant C. C. Kenney to the defendant Carrie H. Kenney, his wife, through the defendant Blitz G. Kenney as trustee; and that the legal title to said real estate has been at all times since said date, and now is, in the said defendant Carrie H. Kenney," and rendered a decree dismissing the case, and Hews has appealed.

We shall not attempt to set out all or any considerable portion of the evidence given on the trial of this case in the district court.   The appellant introduced evidence which tended to show that from the autumn of 1876 until about the year 1883 the appellees, C. C. Kenney and Carrie H. Kenney, his wife, resided in Richardson county; that C. C. Kenney was during that time the owner of a house and lot in Salem, in said county, and owned and conducted a drug business; that persons well acquainted with Kenney and his wife and more or less conversant with their financial affairs had no knowledge of any money or property owned by Mrs. Kenney during that time. The evidence in behalf of Mrs. Kenney tended to show that she was married to C. C. Kenney in the autumn of 1876 ; that she was the daughter of a Mr. Holt, who at that time and subsequently was engaged in the banking business at Falls City, Nebraska; that at the time of her marriage her father gave her $1,000 in cash and within a few months there-

after $700 more in cash and some other property; that
this money was entrusted by Mrs. Kenney to her husband
to be invested and used for her benefit; that he used some
of it in his business, and that he loaned some of it; that
some time in the year 1882 she induced her husband to sell
out his business in Richardson county and remove to the city
of Lincoln; that with that object in view the husband and
wife came to the city of Lincoln in June, 1882; that they
examined the property in controversy and it was agreed
that it should be purchased and paid for out of the wife's
money then in the hands of the husband and conveyed to
her; that the contract of purchase of the property was then
made with Alexander and $500 cash paid to him on the
purchase out of the wife's money. In the meantime they
began the erection on said lot of a brick building, the cost
of the construction of which was paid with the wife's
money; that while the building was being constructed the
wife and her husband borrowed $800 from the wife's
father, giving their joint note for it, and that this money
was used in constructing the building and was repaid to
the wife's father out of the rents of the building after it
was completed; that during the time the building was in
progress of construction the wife's father gave her other
sums of money which were used in the construction of the
building; that the final payments on the lot were made to
Alexander out of the wife's money; that some time after
the deed was made by Alexander to C. C. Kenney for
the lot the wife discovered that it had not been deeded to
her, and called her husband's attention to the fact that the
lot was paid for with her money, and by the agreement
between them was to be hers, and thereupon, in 1884, C.
C. Kenney executed and delivered a deed direct to Mrs.
Kenney for the lot. This deed was never recorded. Af-
ter the execution of this deed C. C. Kenney was advised
by a lawyer that a deed from a husband to a wife direct
was invalid under the laws of this state, and thereupon

the deed was destroyed, and C. C. Kenney and his wife made the conveyance of the 9th of May, 1887, to Blitz Kenney, who thereupon on the same date executed to Mrs. Kenney a deed for the real estate.   This deed Mrs. Kenney delivered to her husband to have recorded, but without her knowledge or consent it was withheld from the record and was finally lost; and that the deed made by Blitz Kenney to Mrs. Kenney for the property on the 24th of June, 1889, was made to take the place of the deed last aforesaid which had been lost.

It will thus be seen that the finding of the district court is abundantly supported by the evidence.   The husband having purchased this real estate with his wife's money for her and under an agreement between them that the conveyance should be made to her, when the property was conveyed to him he held it as her trustee. (*Ross v. Hendrix*, 15 S. E. Rep. [N. Car.], 4; *Cresswell v. McCaig*, 11 Neb., 222; *Union Nat. Bank v. Harrison*, 16 Neb., 635.)   The learned counsel for the appellant, as we understand him, does not controvert this; but his argument is that the act of Mrs. Kenney in permitting the title to this real estate to stand in the name of her husband and of record in his name was a " fraud in law" against the husband's creditors.   It is undoubtedly true that if a wife knowingly permits her husband to carry in his own name and of record the title to her real estate and to hold himself out to the world as the actual owner thereof, and if he is given credit, and is enabled to and does contract debts because those dealing with him suppose he is the owner of the real estate standing in his name, then the wife could not be heard to claim title to the real estate as against such creditors ; but that is not this case.   There is no evidence in the record that the cause of action on which is based the judgment which it is sought to have satisfied out of Mrs. Kenney's property was contracted on the supposition or belief that C. C. Kenney was the owner of the property in suit.   By the statutes of

this state fraud is made a question of fact. (Compiled Statutes, ch. 32, sec. 20.) Cases have arisen, and will doubtless arise again, in which courts of equity have made the property of the wife, the title to which was held in trust by her husband, liable for his debts; but these cases are not based upon the doctrine that the act of the wife in permitting the husband to carry in his own name and of record the title to her real estate is a "fraud in law," but upon the theory that the wife, by permitting her husband to keep in his own name the title to her property, to hold it out to the world as his, to contract debts on the faith of his being the actual owner of the property, estops herself as against the husband's creditors deceived thereby from claiming the property. Such is the case of *Besson v. Eveland*, 26 N. J. Eq., 468, where it was held (I quote from the syllabus): "Where a husband uses the money of his wife in paying for land, the title to which he takes in his own name, a trust will arise in favor of the wife, which a court of equity will protect against the husband's creditors; but the design of the parties to create the trust must clearly appear, and the conduct of the wife be free from suspicion. But where the husband has taken the title to property in his own name, with his wife's knowledge, and she has permitted him for years to represent the property to be his, and, upon such apparent ownership, to obtain business credit and standing, equity will not protect the property from the husband's creditors, even if the design to create a trust in favor of the wife were clearly established by the evidence. He who is silent when conscience requires him to speak will not be permitted to speak when conscience requires him to be silent; and every transaction falls fairly within the operation of this maxim, where an innocent person, exercising reasonable prudence, has been misled to his injury by false lights or appearances, held out with the consent or knowledge of the person, subsequently alleging that the true state of affairs was totally different from what it

seem(d." The question in the case at bar is one of equity between Mrs. Kenney and Hews. Under the evidence in the case who has the better right in equity, Mrs. Kenney or Mr. Hews? The appellant has not been injured nor misled because C. C. Kenney had in his own name and of record the title to his wife's property. The appellant extended no credit to C. C. Kenney on the supposition that he was the owner of the lot in controversy. The learned judge was entirely right in holding that Mrs. Kenney's property was not liable for the debt of her husband, and the decree is

AFFIRMED.