WILLIAM A. CLEGHORN, EXECUTOR, APPELLEE, V. SIMON
OBERNALTE ET AL., APPELLANTS.

FILED FEBRUARY 2, 1898.   No. 7791.

1. **Husband and Wife: TITLE TO REALTY: TRUSTS.** A husband and his
family resided on a rented farm. The husband worked at his
trade of plasterer, was an habitual drunkard and squandered his
earnings, devoting none of them to the support of his family. The
wife and children conducted the farm, she doing the labor of a
farm hand. During this time she purchased, on executory con-
tract, a piece of land and made the first payment thereon out of
the earnings of her labor. She and her husband then moved on
the land purchased. The husband continued to conduct himself,
and the wife to labor and manage the new farm, as before, and
from her earnings thereon, with his consent, she made the de-
ferred payments on the land purchased, when the vendor, by inad-
vertence or mistake, deeded the land to the husband. *Held*, (1)
That the money earned by the wife was her property; (2) that the
land purchased belonged to the wife; (3) that the husband held
the legal title to said land in trust for her; (4) that said land was
not liable for a debt of the husband contracted before the date of
the conveyance to him.

2. ——: ———: ———: ESTOPPEL. Where land is paid for with a
wife's money, but deeded to the husband, he will hold the title in
trust for her; and she is not estopped from claiming the land as
against her husband's creditors unless her conduct in the premises
induced them to believe that the husband was the actual owner of
the land and to extend credit to him on the strength thereof.

APPEAL from the district court of Cass county. Heard
below before CHAPMAN, J. *Reversed.*

*Byron Clark,* for appellants.

*Beeson & Root, contra.*

RAGAN, C.

William A. Cleghorn, executor of Frank Stander,
brought this suit in the district court of Cass county
against Simon Obernalte, Lena Obernalte, his wife, and
Simon Hansen, praying for a decree setting aside a con-
veyance of certain real estate made by Obernalte and

wife to Hansen, and another conveyance made by Hansen of the real estate to Obernalte's wife, and to subject said real estate to the payment of a judgment in favor of the executor against Simon Obernalte. The executor had a decree and the parties made defendants in the court below have appealed.

1. The petition in this case is one in the nature of a creditors' bill and is framed upon two theories, the first being that the real estate was the property of Simon Obernalte at the time he became indebted to the executor's testator, and that the conveyances were made for the purpose of placing the title to the real estate in Obernalte's wife and thus hindering and delaying Obernalte's creditors. But the evidence in the record will not sustain a decree based upon this theory of the petition. The evidence shows, without conflict, that at the time of the trial of this action, in 1894, Obernalte and his wife had been married some twenty-five years; that they then had seven children, the youngest of these being five years of age and the oldest twenty-four, and that some of these children were males; that Mrs. Obernalte, prior to her marriage, worked for wages as a domestic and saved her earnings and seems to have invested them in an acre tract of land in the city of Plattsmouth. Some years after their marriage Obernalte and his family moved upon a rented farm near Weeping Water, in Cass county, and remained there until about 1880. During this time Obernalte, who was a plasterer and brick mason, did little, if any, work upon the farm. When he did work he worked at his trade, and, being then and down until 1892 an habitual drunkard, squandered his earnings. During these years prior to 1880 Mrs. Obernalte and the children conducted the rented farm, she performing regular farm labor, such as caring for stock, harvesting, and husking corn and other such work as is usually done by men. In the meantime she sold the acre lot she owned in Plattsmouth for cash, and about 1880 she purchased from some person or corporation in the city of Lincoln the 160 acres

of land in controversy, receiving a contract for a deed, though this contract seems to have run to the husband. At the time of this purchase she made the first payment of $150 cash, and of this sum her husband contributed $25 only, and never at any time contributed any further sum towards the payment of the land. The Obernalte family then moved upon the land purchased. Obernalte continued to conduct himself as he had been doing up until 1892, when he seems to have reformed; but from the time of the purchase of this land until this trial Mrs. Obernalte and the children remained upon it and cultivated it, Mrs. Obernalte performing the labor usually performed by a man in the cultivation and conduct of the farm, and from the earnings and proceeds of this farm she made the annual payments upon the land purchased under contract, until in September, 1889, the vendor of the land conveyed it by deed to Simon Obernalte. In the same month he and his wife made the deed attacked in this action to Hansen, and in the following January Hansen conveyed to Mrs. Obernalte. The evidence shows that the deed of this land to Simon Obernalte was by mistake or inadvertence; that it should have been made to Mrs. Obernalte. The debt on which the judgment against Simon Obernalte is based was contracted on November 12, 1888. At that date Simon Obernalte signed a note to one Stander, as surety for some other parties. Mrs. Obernalte had no knowledge of the existence of this debt until the year 1892, about a year before judgment was rendered upon the note. It will thus be seen that on November 12, 1888, at the time Obernalte became surety on the note, he did not have even the legal title to the real estate in controversy, and he never at any time owned the equitable title to this real estate. The equitable title to this real estate was purchased and paid for by Mrs. Obernalte with her money, except the $25 furnished by the husband, and when Obernalte became possessed of the legal title to the land in September, 1889, he held the title in trust for his wife, and since he was never the

48

owner of the real estate it was never liable for his debts. This case falls within the principle of *Mosher v. Neff*, 33 Neb. 770. In that case Neff purchased certain land with money belonging to his wife, but took the deed therefor in his own name. Afterwards he signed a note as surety, on which judgment was rendered against him. After the recovery of the judgment Neff conveyed the land through a trustee to his wife, and the court held that the husband held the legal title of the land in trust for his wife and it was not liable for his debts, since the record showed that the debt upon which the judgment was rendered was not contracted by Neff upon the faith of his being the owner of the real estate. In *Hews v. Kenney*, 43 Neb. 815, it was held that where a husband uses the money of his wife in paying for land the title to which he takes in his own name, a trust will arise in favor of the wife which a court of equity will protect against the husband's creditors, unless it is made to appear that such creditors gave the husband credit on the faith of his being the actual owner of the property of the wife the title to which was in his own name. Neither of these cases, nor the conclusion which we reach here, that Simon Obernalte, while he held the legal title to this real estate held it in trust for his wife, are opposed to *Brownell v. Stoddard*, 42 Neb. 177. That was an action by judgment creditors to subject to the payment of their judgments lands conveyed by a debtor through a third party to the debtor's wife. The district court subjected the lands to the payment of the husband's debt; but in that case the husband acquired the title to the land in 1871 and the conveyance to his wife occurred in 1887; and at the time the land was purchased the wife had furnished her husband $1,000 of the purchase money, and the court allowed her a lien upon the land prior to the lien of the husband's creditors for this $1,000 and interest. This was the feature of the decree which was complained of, and the court held that the wife was not entitled to this lien, since there was no evidence to show that there was any agreement or inten-

tion between· herself and husband at the time she fur-
nished the money that he should repay it or she have an
interest in or lien upon the land by reason thereof.

2. A second theory upon which the petition in this case
is framed is that though Mrs. Obernalte was the equita-
ble owner of this land, she has estopped herself from
claiming the land as against her husband's creditors be-
cause of her conduct in allowing the title of the land to
remain of record in her husband's name, and that he was
enabled to contract the debt made the basis of this pro-
ceeding upon the belief of the creditor that he was the
actual owner of the real estate. This theory has no sup-
port whatever in the record. In the first place there is
not a particle of testimony to show that Stander ex-
tended credit to Obernalte because he believed him to
be the owner of the real estate in controversy. In the
second place, at the time the debt was contracted in No-
vember, 1888, the legal title to this land was of record in
the name of the person who afterwards conveyed it to
Obernalte, and this conveyance was not made until Sep-
tember, 1889.

The decree of the district court is reversed and the
action dismissed.

                            REVERSED AND DISMISSED.