BIG HORN COLLIERIES COMPANY, APPELLANT, V. PAUL W. ROLAND ET AL., APPELLEES.

FILED APRIL 27, 1928. No. 25723.

*Mothersead & York,* for appellant.

*Raymond & Fitzgerald, Morrow & Morrow, White & Lyda* and *E. H. Westerfield, contra.*

Heard before GOSS, C. J., ROSE, GOOD, DEAN, THOMPSON and HOWELL, JJ., LANDIS and REDICK, District Judges.

REDICK, District Judge.

This is a proceeding in the nature of a creditor's bill to subject certain assets claimed to be the property of the defendant Paul W. Roland to the payment of a judgment rendered in favor of plaintiff on February 27, 1926, against said Roland for the sum of $2,629.69. Paul W. Roland was in the retail coal business at Scottsbluff, and the judgment was for a balance of the account for coal sold to him by plaintiff. Paul and Mabel Roland were husband and wife. The petition alleges that certain real estate in East Minatare, Nebraska, although standing in the name of the de-

fendant Mabel C. Roland, was in truth and in fact the property of Paul W. Roland. This property will be hereinafter referred to as the Minatare property. The plaintiff further alleged that certain lots in Scottsbluff had been purchased by Paul W. Roland with his funds, but the title taken in the name of Mabel C. Roland for the purpose of defrauding, hindering and delaying the creditors of Paul.

The defendants Paul and Mabel Roland filed separate answers, denying all fraudulent intent, and alleging that the Minatare property, consisting of two vacant lots, was given to Paul W. Roland by the Commercial Club on condition that he would erect a hotel thereon, and that subsequently the hotel was erected and furnished with the joint funds of Paul and Mabel, and that the property was conveyed as a gift to Mabel in the year 1916, some seven years prior to any dealings with plaintiff.

The answers further allege that the lots in Scottsbluff were purchased by defendant Mabel C. Roland with her own funds for the sum of $1,150 in 1919, and subsequently a residence was erected thereon with the funds of said Mabel and the proceeds of a loan in the sum of $4,500 from the Nebraska State Building & Loan Association of Fremont, and that the premises, ever since the building of said residence and at the present time, constitute the homestead of said Paul and Mabel C. Roland, who are husband and wife. At the time of the purchase of the Scottsbluff lots the title was taken in the name of Paul, but in February, 1924, Paul conveyed his interest in the same to Mabel in part payment of an indebtedness to her in excess of $5,000 for money loaned.

The plaintiff replied, admitting the conveyances of the properties, and that the Scottsbluff property is occupied as a residence by defendants, but denying the other allegations of the answer.

After the plaintiff had introduced its evidence, leave was granted by the court to amend the petition to set up an estoppel as against the defendant Mabel C. Roland, alleging that to induce the plaintiff to extend credit to said

Paul W. Roland, in the presence of said Mabel, Paul represented that the Minatare property belonged to him, and that Mabel did not deny said statement or claim that the property belonged to her; and that at the time the plaintiff extended credit to Paul the title to the Scottsbluff property stood in the name of Paul, and that said Paul represented to plaintiff, in the presence of Mabel, that he was the owner thereof, which statement was not denied by Mabel, and that plaintiff extended credit to Paul relying upon his statement and the fact that the title was in his name.

There were other parties to the proceedings and appropriate pleadings concerning their interests, but it will not be necessary to set them out in detail as the controversy is wholly between the Rolands and the plaintiff. The district court found that the Minatare property belonged to Mabel and dismissed the action as far as that property was concerned. It found that the Scottsbluff property belonged to Paul, that the same was the homestead of the defendants, that it was of value in excess of the homestead interest, that the plaintiff's judgment was a lien upon said excess, and ordered the property sold and the proceeds to the extent of $2,000 paid to defendants, and any surplus to be applied in payment of the plaintiff's judgment. Plaintiff appeals from that portion of the decree denying him a lien upon the Minatare property, and the defendants file a cross-appeal from that part of the decree subjecting the Scottsbluff property to plaintiff's judgment.

Since the proceedings were commenced, the Minatare property has been sold and the purchasers have been dismissed from the case, and the contest is over the sum of $4,000, a part of the proceeds of said sale in the hands of Mabel C. Roland and her son Aurice in the form of stock in the Occidental Building & Loan Association, which interpleads and asks directions from the court as to the disposition of the stock. The plaintiff is in no position to attack as fraudulent the conveyance of the Minatare property which was dated and recorded in August, 1916, long before the existence of any indebtedness to plaintiff. *Jayne*

*v. Hymer,* 66 Neb. 785. And therefore, so far as this property is concerned, plaintiff must rely upon an estoppel. It is not claimed that the conveyance to Mabel was made with the intention to defraud future creditors.

The question of estoppel rests upon the testimony of S. W. Smith, the salesman of the plaintiff with whom all dealings with Paul W. Roland were had. He testifies in substance that, when the account with plaintiff was opened, Roland told him that he had a hotel property in Minatare and a residence in Scottsbluff. Mabel was not present at this conversation, and the evidence does not show any knowledge of these representations, if they were made, and, of course, she would not be bound thereby. He further testified that in the latter part of January or first of February, 1924, he had a conversation at Roland's office with him at which Mabel was present, in which he says: "A. Mr. Roland and her and I talked together several times about the payment of the account, and about the indebtedness due the company. * * * I can't give it word for word what was said. We were trying to get some money, but he made the statement that collections were awful hard, and that he had to pay his taxes and all the interest, etc., on his properties; and he also stated at one of these conferences that his property at Minatare was not bringing him in anything and that it was more of a liability than an asset at that time." Mabel said nothing. "He said he had to pay payments on his house and on his property at Minatare, and he also stated that he had to make a payment on a carload of coal that he bought from another company. Q. This was a conversation at which Mrs. Roland was present? A. I believe Mrs. Roland was there." He then testified that Roland showed him the Minatare hotel property in 1925, Mabel not being present. Later he testified that Roland told him the Scottsbluff property cost him $16,000, but that he did not think it was worth now more than $9,000 or $10,000; he thinks this conversation took place in December, 1923, but that Mrs. Roland was not present. When asked if Mrs. Roland took any part

in the conversation with reference to the debt or payment of it, he answered: "I rather believe that she did talk with us about it, but I don't remember what she said. Just the three of us was talking together there. I don't remember what she said about it at that time. I can't recall it exactly."

It will be noted that the only conversation regarding the properties in question at which Mabel was said to be present was in January or February, 1924, and the witness Smith does not seem to be positive that she was present, saying he believed she was. He says she took no part in the conversation, and it does not appear that she was in a position to or did hear the same, except a possible inference from the uncertain fact that she was present. While it appears that she was in the office a number of times when Smith was there, she was often occupied with the telephone or some other matters. The plaintiff made no investigation as to the title to the properties in question until shortly before bringing suit upon the account after it had been closed. It is in no position, therefore, to claim that it relied upon a title as shown by the records. The claim of estoppel must rest entirely upon the representations said to have been made at the conversation of January or February, 1924.

"To sustain an estoppel because of an omission to speak, there must be both the specific opportunity and the apparent duty to speak. The party maintaining silence must have known that some one was relying thereon, and was acting, or about to act, as he would not have done had the truth been told." *Smith v. White,* 62 Neb. 56.

"In order to constitute an equitable estoppel by silence or acquiescence, it must be made to appear that the facts upon which it is sought to make the estoppel operate were known to the parties against whom the estoppel is urged." *City of Lincoln v. McLaughlin,* 79 Neb. 74.

We think this evidence is clearly insufficient to establish an estoppel against Mabel C. Roland. The account was opened in September, 1923, and at the time of the alleged

estoppel Roland was indebted to plaintiff about $2,000, and after that time the indebtedness was paid down to about $900, and then increased to the amount of plaintiff's judgment. In fact, the indebtedness as existing in 1924 was entirely wiped out by the application of subsequent payments to the oldest items of the account. The decisions are not harmonious upon the question whether or not plaintiff's claim of priority is defeated by the facts just noted, and we do not decide the point. The affirmative of the proposition has been held in *Nelson v. Vanden,* 99 Tenn. 224; *Gardner v. Kleinke,* 46 N. J. Eq. 90. *Contra, Spuck v. Logan & Uhl,* 97 Md. 152.

The title to the Scottsbluff property was taken to Paul C. Roland at the time of its purchase in 1919 and was not conveyed by him to Mabel until February 27, 1924, and the question remains whether or not such conveyance was fraudulent as against the plaintiff. The testimony of the Rolands is undisputed that the purchase of these lots was made with the funds of Mabel, derived from rentals of the Minatare property and other separate funds of Mabel; also that the residence built thereon was paid for by the sale of other property in Scottsbluff belonging to Mabel, the sum of $3,600, $1,000 borrowed from C. D. Wildy, president of the American State Bank, and $4,500 borrowed from the Nebraska State Building & Loan Association. If this evidence is credible, it appears that the investment of Mabel in this property was about $10,250, while the highest value placed upon it at the time of the trial was $8,000; and it would therefore follow that Paul had a right to convey the property to her, and creditors have no right to complain. We think this testimony is worthy of belief and that Mabel's ownership of the Scottsbluff property is established. The only facts appearing of record tending to cast any doubt upon our finding are the fact of the title in Paul, that Mabel's funds, as she claims them, were not kept separate and distinct, but apparently were deposited in a joint account at the American State Bank, in the name of Paul, but upon which both parties were authorized to and

did draw, and the further fact that Mabel claims to have loaned her husband during the period May, 1916 to 1925, the sum of $5,000 to $7,000. This claim is not so incredible, however, as at first it might appear, because the Minatare property was first rented in 1916 for five years at $150 a month, and the evidence indicates that rentals during the entire period would average from $1,000 to $1,500 per annum. While these matters are proper for consideration, we do not think they are sufficient to stamp the transaction as fraudulent in the face of the convincing evidence of Mabel's investment in the property conveyed. We conclude that the judgment of the district court as to the Minatare property should be affirmed, and as to the Scottsbluff property, reversed, and it is so ordered. The cause is remanded to the district court, with instructions to dismiss the proceedings.

AFFIRMED IN PART, AND REVERSED IN PART.