CLYDE CREASON, ADMINISTRATOR OF THE ESTATE OF
RAYMOND L. SHIELDS, DECEASED, APPELLANT, V. RILEY
D. WELLS ET AL., APPELLEES.

62 N. W. 2d 327

Filed January 29, 1954.   No. 33395.

*Dryden, Jensen & Dier* and *Baskins & Baskins,* for
appellant.

*Maupin & Dent,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

A judgment for money only was rendered by the dis-
trict court for Hall County on January 27, 1950, in favor
of appellant and against Riley D. Wells.   A transcript

of it was made of record in the office of the clerk of the district court for Lincoln County on February 1, 1950. The attempt of appellant to collect the judgment by execution was wholly unsuccessful. He claimed that the judgment debtor was the owner of two lots in the city of North Platte and an automobile, and that he had conveyed one of the lots to Walter T. Bassett and the other lot and the automobile to his wife, Lillie D. Wells, for an inadequate consideration with intent to hinder, delay, and defraud appellant in the enforcement of his judgment. Appellant sought by this suit in equity to subject the real estate and the automobile to the payment of his judgment.

The result of the trial of the case was findings that Lillie D. Wells bought the real estate in good faith, paid the entire purchase price thereof, and that she was the owner of it in fee as her separate property and estate; that it was the statutory homestead of appellees; and that the automobile involved was exempt property and was not, at the time of its transfer by the judgment debtor to his wife, the subject of fraudulent transfer. A judgment of dismissal was rendered by the district court. This is an appeal from that judgment. Riley D. Wells and Lillie D. Wells will be identified herein as appellees.

The real estate involved is two lots in Block 6 of Cody's Addition to North Platte, Nebraska. Lot 4 has no improvements. It was bought by Lillie D. Wells on September 13, 1944, for $300. She paid from her separate property that amount in cash to the then owners and on that date they executed and delivered to her a warranty deed for the property in which she and her husband were named as grantees in the relationship of joint tenants. The same day she bought lot 5, which adjoins the other lot and was improved as a residence property, for $2,500. She paid from her separate estate that amount in cash to the then owners, and they on that date executed and delivered to her a warranty deed for the

property in which the grantees were named and described identically as they were in the deed for the other lot. The grantees were described in the deed as joint tenants solely because the real estate man who was concerned with the transfers, prepared the deeds, directed their execution, and took the acknowledgments of the grantors advised Mrs. Wells to have appellees named as grantees so "That if anything happened to me, why my husband would come in without having to go into court." Riley D. Wells did not purchase the property and he made no contribution to the purchase price of either lot. The real estate broker knew that Mrs. Wells was the sole purchaser and that she alone paid all the consideration for the lots. She and her husband took possession of the lots as one tract and have since occupied and used them as their home.

Lillie D. Wells and Riley D. Wells are respectively 72 and 73 years of age. They were married in 1907. They have no children. They conducted farming operations before they became residents of North Platte. Their financial affairs were inconsiderable. They had an understanding that Mr. Wells would pay from his income their living expenses, and that any amount earned and received by Mrs. Wells should be her separate property. They maintained this arrangement. Mrs. Wells while they were farming retained and saved the money she received from chickens and cream. After they moved to North Platte in 1924 Mrs. Wells bought and took title to a small residence property. It was encumbered by mortgage. She received about $1,500 from the estate of her mother and from this the mortgage on the house was paid. This house was divided into three units. Appellees lived in one, and two of them were rented from about the year 1925 to 1944. Much of the time the rental was small but the rental therefrom for some period of time was as much as $50 a month. Mrs. Wells received the rental. She, during a period of about 20 years commencing about 1924

until she purchased the real estate involved herein, worked for hire doing all kinds of manual labor including housework, scrubbing floors, house cleaning,. and laundry work. She estimated that she was engaged to and had performed labor in as many as 50 separate homes in North Platte. She also did laundry work in her home for others. Her compensation was not large but she was constant in her effort and her income though small was continuous. Literally she slaved and saved. She made a record of the work performed and the compensation she was paid. Two of the books containing the record are exhibited in this case. One of these begins with January 7, 1925, and continues to December 30, 1930. This indicates a total in excess of $4,000. The other commences with January 3, 1931, and ends with two entries in 1950. The amount she earned and received as shown in the last book was $2,894.48. She retained the money she earned and the rental she received as her separate property and estate. Mr. Wells used the money he earned for living expenses including the maintenance of the home. He had a small balance left from the sale of his personal property used in farming when appellees moved to North Platte. He was a laborer while living in North Platte. He was a railroad section hand for several years, worked for about 4 years on the Union Pacific rip track, and was a janitor in the public schools for some period of time.

The deeds complained of by appellant were made after and as a result of the submission to an attorney of the history of the arrangement between and the financial transactions of appellees, the facts concerning the purchase of the property involved, the manner in which the money had been earned and saved by Mrs. Wells which was used to pay the purchase price of the property, and the fact that the money was her separate property. Riley D. Wells executed and delivered to Lillie D. Wells on December 2, 1949, a quitclaim deed in which is described lots 4 and 5 referred to above.

Appellees on December 5, 1949, executed to Walter T. Bassett a quitclaim deed to lot 4 described above. These are the two deeds challenged by appellant. There was no consideration for the deed to Walter T. Bassett or for the deed from him and his wife to appellees for the same property and made on the same day as the deed to Walter T. Bassett. He or his wife claims no interest in any part of the property affected by this litigation. Appellant claims that the proof is insufficient to establish that title to the real estate was vested in Lillie D. Wells in good faith and for an adequate consideration.

Section 36-401, R. R. S. 1943, contains the following: "Every conveyance * * * of any * * * interest in lands * * * made with the intent to hinder, delay or defraud creditors * * * shall be void." It has been considered and often expressed that a conveyance of real estate from a husband to his wife is presumptively fraudulent as to any existing creditor of the husband if it prejudices the creditor in the collection of his claim, and in litigation between the creditor and the parties to the conveyance testing the validity of the conveyance the burden is on the parties to it to establish the good faith of the transaction. Riggs v. Hroch, 133 Neb. 260, 274 N. W. 598; Bank of Brule v. Harper, 141 Neb. 616, 4 N. W. 2d 609; Van Steenberg v. Nelson, 147 Neb. 88, 22 N. W. 2d 414; Nowka v. Nowka, 157 Neb. 57, 58 N. W. 2d 600.

Appellant relies upon this doctrine in his challenge of the integrity of the judgment of the district court. Lillie D. Wells urges in opposition that she has established adequacy of consideration and good faith. She bought and paid for the property in question by the use of her separate property and estate on September 13, 1944. The evidence of this is not disputed. She was induced by incorrect information to accept deeds in which her husband was named as a grantee. Whatever he acquired thereby he held under the circumstances here shown as trustee for his wife. She paid $2,800 for the property in 1944. The maximum estimate of the value of the prop-

erty at the trial was $4,000. All things considered as reflected by the record permits it to be said and found that the value of the property does not exceed the amount she has devoted to it. The evidence shows good faith and adequate consideration. Lillie D. Wells was entitled to a conveyance from her husband. The making of it was not a legal wrong to appellant. Proof that a conveyance of real estate from a husband to his wife was made in good faith and for an adequate consideration is sufficient to sustain the conveyance against an attack on it by a creditor of the husband. In Slosburg v. Hunter, 136 Neb. 324, 285 N. W. 563, the court considered these facts: Delle Hunter, the wife of Chester E. Hunter, received on July 11, 1910, $2,000 from an insurance policy on the life of her father. She invested the money in stocks and bonds for about 3 years. The securities were then converted to cash and it was paid on a home, the title to which was taken in the name of her husband. The home was traded for a farm. The title to it was taken in the name of her husband. A deed made by the husband to his wife for an undivided one-half of the farm was attacked as fraudulent in a suit commenced by a creditor and subsequently prosecuted by the trustee in bankruptcy of the estate of the husband. The court in sustaining the conveyance from Chester E. Hunter to his wife, Delle Hunter, said: "The evidence of the only disinterested witness fixes the value of the Sarpy county land at $10,000 or $11,000. The property was encumbered by a first mortgage of $3,000. Under this statement of the record the trial court was justified in holding that there was ample consideration for the conveyance of an undivided one-half interest in the land to Delle Hunter. That she had $2,000 invested in the land is satisfactorily established. Any reasonable computation of interest on this amount for the time it was invested shows that the value of the property conveyed did not exceed the amount due from the grantor. The trial court was right in sustaining the

conveyance of an undivided one-half interest in the Sarpy county land to the defendant Delle Hunter." See, also, Big Horn Collieries Co. v. Roland, 116 Neb. 846, 219 N. W. 233; Butke v. Nachschoen, 133 Neb. 366, 275 N. W. 318; Cleghorn v. Obernalte, 53 Neb. 687, 74 N. W. 62; Hews v. Kenney, 43 Neb. 815, 62 N. W. 204; Taggart v. Fowler, 25 Neb. 152, 40 N. W. 954.

It is necessary to the success of a suit against a wife to set aside a conveyance of property made to her by her husband to allege and establish that the relation of debtor and creditor existed between the plaintiff and the husband at the time the conveyance was executed or that it was executed fraudulently with the expectation on the part of the husband that he would become indebted to the plaintiff at a future time and for the purpose of preventing, hindering, and delaying the collection of the debt when it should finally be contracted. A conveyance between close relatives is only presumed to be fraudulent as to a creditor of the grantor who owned an indebtedness of the grantor at the time of the conveyance. In Big Horn Collieries Co. v. Roland, *supra,* this court said: "A creditor whose debt did not exist at the date of a voluntary conveyance by the debtor cannot attack such conveyance for fraud, unless he pleads and proves that the same was made to defraud subsequent creditors whose debts were in contemplation at the time." There is no proof of the time when the claim or cause of action resulting in the judgment of appellant against Riley D. Wells arose or accrued. It cannot be presumed it was before the conveyances assailed in this case. The burden was on appellant in this regard. There is an absence of evidence that either of the deeds was made in contemplation of a future indebtedness of Riley D. Wells to appellant or his decedent. It was not evidence of fraud that Lillie D. Wells obtained a conveyance to complete the evidence of the title to property owned solely by her and to prevent any part of it being subjected to a debt of her husband.

There is no estoppel against Lillie D. Wells by virtue of the fact that she permitted the deeds and the record title of the real estate to recite that her husband was apparently the owner of an interest in the real estate. Appellees and Raymond L. Shields, deceased, were strangers. It is not shown that they had any contact or acquaintance or that there was any transaction between them or any of them that was in any way induced, influenced, or affected by the fact that Riley D. Wells was named in the deeds from the vendors of the real estate. In Cleghorn v. Obernalte, *supra,* it is said: "Where land is paid for with a wife's money, but deeded to the husband, he will hold the title in trust for her; and she is not estopped from claiming the land as against her husband's creditors unless her conduct in the premises induced them to believe that the husband was the actual owner of the land and to extend credit to him on the strength thereof." See, also, Hews v. Kenney, *supra;* Big Horn Collieries Co. v. Roland, *supra.*

The 1939 Chevrolet automobile was purchased and owned by Riley D. Wells until he transferred it to his wife in 1949. The value of it did not exceed $250. Appellees claim that Riley D. Wells was the head of a family; that he owned no property subject to a homestead exemption; and that the car was exempt property. § 25-1552, R. R. S. 1943. The real estate owned by Lillie D. Wells was selected as and it was a homestead. It was not only her homestead but also the homestead of her husband. He could not claim personal property as an exemption by virtue of the statute referred to above as long as he had a homestead exemption or estate in the real property of his wife. In Stout v. Rapp, 17 Neb. 462, 23 N. W. 364, it is said: "Where the title to the family residence is in the wife, it is nevertheless the homestead of the family, and is exempt from judgment or forced sale upon execution or other process, and in such case the head of the family is not entitled to the further exemption of $500 in personal property under the

provisions of section 521 of the civil code." See, also, Widemair v. Woolsey, 53 Neb. 468, 73 N. W. 947; Dennis v. Omaha National Bank, 19 Neb. 675, 28 N. W. 512. However appellant did not allege and prove that the transfer of the motor vehicle was made in contemplation of a future indebtedness of Riley D. Wells. Big Horn Collieries Co. v. Roland, *supra*.

A cross-petition was made by Lillie D. Wells in which she asked the court to quiet the title to the property involved in her free of the claims and alleged lien of appellant because of his judgment against Riley D. Wells. Lillie D. Wells is entitled to this relief and to have the costs of the litigation in the district court and in this court taxed to the appellant.

The judgment of the district court dismissing this case should be and it is reversed and the cause should be and it is remanded with directions to the district court for Lincoln County to render and enter a judgment quieting the title to all the property involved herein in Lillie D. Wells free and clear of all claims made by appellant in reference to said property and subject only to the homestead rights of Riley D. Wells in the real estate. The costs of the case in this court and the district court should be and they are ordered to be taxed to appellant.

REVERSED AND REMANDED WITH DIRECTIONS.