NELSON v. VANDEN.

(*Jackson.*     September 20, 1897.)

1. FRAUDULENT CONVEYANCE.  *Subsequent creditors, who are.*

   The complainants in a suit to set aside a voluntary conveyance
   are held to be subsequent creditors of the grantor, although
   he owed them large sums at date of deed, where he afterwards
   paid off those debts and then contracted the debts sued on.
   (*Post, pp. 229, 230.*)

   Case cited: 46 N. J. Eq., 94.

2. SAME.  *Voluntary conveyance not presumed fraudulent as to sub-
   sequent creditors.*

   A voluntary conveyance will not be presumed fraudulent as to
   subsequent creditors, but fraud in fact must be established.
   (*Post, pp. 231–233.*)

   Cases cited and approved: Nicholas v. Ward, 1 Head, 324; Nelson
   v. Kinney, 93 Tenn., 443; Trezevant v. Terrell, 96 Tenn., 528.

3. SAME.  *Showing antecedent indebtedness to impeach a voluntary
   conveyance.*

   Although subsequent creditors may impeach a voluntary convey-
   ance by showing antecedent debts, to afford reasonable evidence
   of fraudulent intent, the mere existence of debts at the time'
   of such conveyance is insufficient for this purpose if amply suf-
   ficient property is retained to meet the indebtedness.  (*Post,
   pp. 233, 234.*)

4. SAME.  *Debts created after registration of deed.*

   One who gives credit to the grantor in a duly registered voluntary
   conveyance six months after its registration cannot claim that '
   he relied on the security of the property conveyed.  (*Post, pp.
   234–240.*)

   Cases cited: Martin v. Oliver, 9 Hum., 561; Levering v. Norvell,
   9 Bax., 176; Laird v. Scott, 5 Heis., 314; Trezevant v. Terrell,
   96 Tenn., 528; White v. Bettis, 9 Heis., 645; Churchill v. Wells,
   7 Cold., 364; 106 U. S., 260; 69 Am. Dec., 412.

Nelson *v.* Vanden.

5. SAME.  *Valid as to subsequent creditors.*

A voluntary conveyance is valid as to a subsequent creditor who had actual or constructive notice of the conveyance when the debt was contracted, and no actual fraud was practiced upon him, although existing creditors remain unpaid, and the conveyance is fraudulent as to them.  (*Post, pp. 238–240.*)

Case cited and approved.  Spence *v.* Dunlap, 6 Lea, 457.

---

FROM MADISON.

---

Appeal from Chancery Court of Madison County. A. G. HAWKINS, Ch.

HAYES & BIGGS and E. S. MALLORY for Nelson.

McCORRY & BOND and E. L. BULLOCK for Vanden.

MCALISTER, J.  These causes were consolidated and heard together in the Court below.  The bill filed on behalf of Charles Nelson alleged that the defendant, F. M. Vanden, formerly carrying on business in the city of Jackson, under the firm name and style of F. M. Vanden & Co., is justly indebted to complainant in the sum of $2,145.50 for merchandise sold and delivered; that, on the eighteenth of December, 1894, the said F. M. Vanden, for the consideration of love and affection, transferred and conveyed to his wife, by deed duly recorded, a piece of real estate situated in the city of Jackson, and estimated to be worth $5,000 or

15 P—15

$6,000. Complainants charge that, at the date of said conveyance, to wit, on December 18, 1894, the said F. M. Vanden was heavily indebted to various creditors, and did not possess sufficient property to pay said indebtedness; that said Vanden was indebted to the First National Bank of Jackson, by note dated June 12, 1894, for $3,000; to Mrs. Nancy Vanden, his mother, by note dated January 1, 1891, for $3,700; to F. M. Vanden, Jr., by note dated January 1, 1891, for $500; and to J. W. N. Burkett, by account, for $108.45; that said conveyance to his wife was purely voluntary, and, being presumptively fraudulent as to existing indebtedness, was likewise fraudulent in respect of that contracted subsequently.

Complainants further charge that on January 2, 1896, the defendant, F. M. Vanden, under the firm name and style of F. M. Vanden & Co., made a special assignment to his brother, J. W. Vanden, as trustee, whereby he conveyed his stock of liquors, wines, whiskies, cigars, tobacco, store fixtures, etc., valued at $5,000 or $6,000, for the purpose of securing certain preferred creditors, whose claims aggregated $10,822. Among the creditors preferred by the special assignment were the First National Bank of Jackson, Mrs. Nancy Vanden, and F. M. Vanden, Jr., whose debts were in existence at the date of the voluntary conveyance made by the said F. M. Vanden, Sr., to his wife, on December 18, 1894. It is claimed this special assignment for the benefit of these preferred creditors embraced all the

visible assets and property of said F. M. Vanden & Co., and that said firm, as well as F. M. Vanden individually, is insolvent.

Complainants further charge that they had no knowledge of said voluntary conveyance, made by F. M. Vanden to his wife, until after the registration of the special assignment, made on January 2, 1896; and complainants aver that they were existing creditors of said F. M. Vanden at the date of said voluntary conveyance.

Complainants charge that said voluntary conveyance is in law a fraud upon the creditors of said Vanden, and that it was made for the purpose of hindering and delaying existing and subsequent creditors, and for the purpose of placing his property beyond their reach. It is further charged, that when said voluntary conveyance was made, the said F. M. Vanden then expected and intended to make the special assignment of January 2, 1896. Complainants pray that said voluntary conveyance be adjudged void, and that the land therein conveyed be subjected to the payment of their debts.

The bill of the Mattingly Company was filed January 18, 1896, and contains substantially the same allegations, excepting that it does not charge that said voluntary conveyance was made to defeat subsequent creditors, or was made with the expectation of executing the special assignment of January 2, 1896. It also appears that the said J. G. Mattingly Company was a subsequent creditor, its claim

having been contracted October 1, 1895, after the execution of the voluntary conveyance. This bill also charges that this complainant had no knowledge of the conveyance to the wife until after the execution of the special assignment. It also charges that said voluntary conveyance was fraudulent, and asks that it be set aside, and the property therein conveyed subjected to the payment of complainant's debts.

The answers deny the charges of the bill, and aver, viz.:

(1) The property was bought with the separate funds of Mrs. Vanden, under an agreement at the time that the title was to be made to her, and that the deed of December 18, 1894, was the fulfillment of this agreement;

(2) That the title being in her, and made in fulfillment of the original agreement, could not be divested out of her by complainants;

(3) That the deed is good against existing creditors;

(4) That the complainants being subsequent creditors cannot complain;

(5) That the deed was put of record December 18, 1894, long before these debts were contracted, was notice, and complainants cannot complain;

(6) That Mrs. Vanden has held said lot inclosed for more than seven years, and she is protected by the statute of limitations of seven years.

Proof was taken and decree was rendered February 8, 1897, dismissing the bills in so far as they

sought to reach the real estate, the Court decreeing: "And it further appearing to the satisfaction of the Court, that the burden of showing the deed of December 18, 1894, of F. M. Vanden, to his wife, Fannie M., was in fact fraudulent, resting on complainants, they have not successfully impeached said conveyance; that complainants, being subsequent creditors, have failed to show that said conveyance was in fact fraudulent; that the proof is not of that clear and cogent character as to show the right of defendant, Fannie M., to have enforced the vestiture of title, but, on the other hand, complainants, as subsequent creditors, have failed to show that this conveyance was in fact fraudulent."

The decree further recites, viz.: "The fact that a portion of the money used in payment for this land was money of Mrs. Vanden, is a circumstance tending to show the *bona fides* of the transaction. The bills, so far as they sought to impeach said conveyance and subject the land, are dismissed."

Complainants appealed, and have assigned errors. The first assignment is that the Chancellor erred in holding that complainants were not existing creditors at the date of the conveyance from F. M. Vanden to his wife, December 18, 1894, and, as subsequent creditors, could only impeach the same by showing actual fraud. It is true that, on December 18, 1894, date of conveyance from Vanden to his wife, F. M. Vanden & Co. were indebted to complainant, Charles Nelson, in the sum of $2,162.24, but the

record shows that specific indebtedness was paid and discharged between that date and October 31, 1895.

It is true that, on July 30, 1895, F. M. Vanden & Co. began to make another account with Charles Nelson, which, on December 9, 1895, amouted to $2,145.54. It is true, also, that on October 31, 1895, the date of the payment of the last item on the old account, Vanden then owed and had purchased on the new account goods amounting to $1,227.73. It is insisted that this was simply paying off one debt by contracting another. While this may not be getting out of debt, it is nevertheless true, as a matter of law, that the claim upon which Charles Nelson is now suing was not in existence on December 18, 1894. The indebtedness of that date had been paid and discharged, and the present indebtedness was contracted six months afterwards. He must, therefore, be held a subsequent creditor. *Gardner* v. *Kleinke*, 46 N. J. Equity, 94.

The debt upon which the Mattingly Company sue was contracted in October and November, 1895, and it thus appears that said company is likewise a subsequent creditor. It is true that complainant, Peaslee-Gaulbert Company, had a claim of $112.43 against F. M. Vanden & Co. at the date of the conveyance to Mrs. Vanden, but the record shows that specific indebtedness was afterwards paid, and the debt upon which said company is now suing, amounting to

Nelson v. Vanden.

$145.21, was contracted in October and December, 1895, long after said conveyance.

The indebtedness to J. W. N. Burkett was in existence at the date of this conveyance, but it was paid off after the bill was filed, and is not now before the Court. It results that all of the complainants upon this record are subsequent creditors. The rule in this State is well settled that, as against existing creditors, a voluntary settlement or conveyance will be presumed fraudulent. But, as to subsequent creditors, there is no such presumption, and fraud in fact must be established. If the conveyance is made with any design of fraud or collusion or injury to other persons in the future, it would be void. So, if it is made with the intent to defraud existing creditors, it will, in general, be held void as to subsequent creditors. *Nicholas* v. *Ward,* 1 Head, 324; *Nelson* v. *Kinney,* 9 Pick., 443; *Trezevant* v. *Terrell,* 12 Pick., 528.

The law on this subject is very clearly expressed in 8 Am. & Eng. Enc. L., page 751, viz.: "Subsequent creditors, as well as antecedent or existing creditors, may avoid a conveyance fraudulent as to them. And a voluntary conveyance may often be impeached by a future or subsequent creditor, even for fraud as to creditors existing at the time it was made. In case of an attack by existing creditors, however, they are aided by the presumption that the conveyance, if voluntary, was intended to defraud them, while the burden is upon subsequent creditors

to show fraud in the transaction. This is usually done by showing that the gift, conveyance, or settlement was made by the debtor in contemplation of future indebtedness. A subsequent creditor who became such with knowledge or notice of the conveyance, cannot, ordinarily at least, successfully attack it as fraudulent. Where a conveyance is once avoided, however, even though it be at the suit of existing creditors, the proceeds become assets generally for the benefit of subsequent, as well as · existing, creditors." *Lloyd et al.* v. *Fulton,* 1 Otto, 485; *Harbuck* v. *Hill,* 112 U. S., 149; *Schryer* v. *Scott,* 134 U. S., 405; *Churchill* v. *Wells,* 7 Cold., 373; *White* v. *Bettis,* 9 Heis., 645; *Levering* v. *Norvell,* 9 Bax., 176; *Trezevant* v. *Terrell,* 12 Pick., 528.

"The intent which will, in general, make such a transfer void, is an actual intent to defraud. It is not necessary, however, to prove such intent by direct and express evidence, for this would be impracticable in many instances where the conveyance ought not to be established. The intent may be collected from the circumstances of the case and such badges of fraud as the transaction wears. Some of the usual badges are, the omission to record the conveyance, possession of the property and obtaining a false credit thereby, the subsequent erection of improvements, the magnitude of the conveyance compared with the grantor's means, the existence of prior debts at the time of the transfer, the concealment of the transfer, the immediate engagement in

a hazardous business, and the contracting of debts immediately after the transfer." Bump on Fraud. Con. (4th Ed.), Sec. 291.

"The conveyance must be made with an intent to put the property out of the reach of debts which the grantor, at the time of the conveyance, intends to contract, and which he does not intend to pay, or has reasonable grounds to believe that he may not be able to pay. There need not be an intent to contract any particular debt or debts. It is sufficient if there is an intent to contract debts and a design to avoid the payment of such debts by the conveyance." Bump on Fraud. Con., Sec. 292.

The burden of proof, then, resting upon complainants, as subsequent creditors, to show that the conveyance to Mrs. Vanden was fraudulent in fact, how has that burden been sustained? The principal fact upon which these subsequent creditors rely, is the existence of large debts against F. M. Vanden & Co. at the date of said voluntary conveyance, to wit, on December 18, 1894.

It is true that subsequent creditors may impeach a voluntary conveyance by showing antecedent debts' sufficient in amount to afford reasonable evidence of a fraudulent intent. When they show an intent to defraud antecedent creditors, such proof is *prima facie* evidence of an intent to defraud subsequent creditors. Bump, Fraud. Con., Sec. 295.

"Existing indebtedness, however, is only one circumstance from which an inference of an intent to

defraud may be drawn, and must be considered in connection with the donor's estate. The true rule by which the fraudulency or fairness of a voluntary conveyance in respect of existing creditors is to be ascertained, is founded on a comparative indebtedness, or, in other words, on the pecuniary ability of the donor at the time to withdraw the amount of the donation from his estate without the least hazard to his creditors, or in any material degree lessening their then prospects of payment. In other words, the fraudulent intent is to be collected from the comparative value and magnitude of the gift." Bump, Fraud. Con., Sec. 248.

So that mere indebtedness at the date of the voluntary conveyance is not evidence of fraud. It is the insolvency of the donor and inability to meet his obligations, that stamp the transaction as fraudulent as to existing creditors.

This record discloses that, on December 18, 1894, date of voluntary conveyance, the indebtedness of F. M. Vanden & Co. was between $14,000 and $16,000. It is further shown, that on December 18, 1894, and January, 1895, when Mr. F. M. Vanden took an invoice, his assets were, viz.:

| | |
|---|---:|
| Stock of goods worth $13,000, or | $15,000 |
| Notes and accounts $30,000, solvent | 15,000 |
| Building and loan stock | 550 |
| McNairy real estate | 400 |
| Fixtures | 300 |
| Peoples' Bank stock | 1.000 |
| Horses, mules, and wagons | 700 |
| The house and lot in controversy, worth from $4,000 to $6,000, say | 5,000 |
| Total | $37,950 |

J. W. Vanden, formerly a member of the firm,. but who retired prior to conveyance, and who, so far as we can see, is now disinterested, states that F. M. Vanden & Co., in December, 1894—date of deed to wife—was solvent, and that the assets of the firm would exceed the liabilities by $10,000. He also shows that merchandise in stock was worth $13,000, and that open accounts were reported good to the amount of $15,000. It is argued, however, that, in order to satisfy existing creditors, and prevent them from attacking the conveyance of December 18, 1894, Vanden conveyed to them, by special assignment, the property purchased of these complainants; that they are secured by complainants' goods, and therefore do not question the voluntary conveyance. It suffices to say, in answer to this position, that it does not appear that any of the goods purchased of these complainants are, as a matter of fact, embraced in said assignment.

Again, it is argued that the conveyance to the wife was executed as a cover for future schemes of fraud and with a view of contracting new debts. It is said that if a voluntary conveyance is made immediately before engaging in some hazardous business, or obligations are incurred so soon after the conveyance as to warrant a presumption that actual fraud was intended, or other circumstances lead to the same inference, a deed will be adjudged fraudulent and void, as well against subsequent as existing creditors. Citing *Savage* v. *Murphy* (N. Y.), 90

Am. Dec., 733. But we find no facts or circumstances in this case indicating that such a fraud was meditated or, in fact, practiced by these defendants. On the contrary, the new indebtedness was not contracted until more than six months had elapsed from the date of the voluntary conveyance, and, in view of the immediate registration of this instrument, these subsequent creditors cannot claim that they relied upon the security of this property.

In *Martin* v. *Oliver*, 9 Hum., it appeared that the attack upon the voluntary conveyance from husband to wife was made by a subsequent creditor, who had both actual and constructive notice of the registration of the instrument prior to extending credit. The Court said: "The deed being required to be registered, is constructive notice to all parties of its existence. Those who deal with the husband, after the execution of the deed, have the means of acquiring full knowledge, and are charged with knowledge, at their peril, of the true condition and title of the property of which he may be the ostensible owner, and, if they trust him upon the faith of such visible ownership, it is the fault of their own indiscretion and want of vigilance, but they cannot, in any proper sense of the term, be said to have been defrauded."

So, in the case of *Laird* v. *Scott*, 5 Heis., 314, this Court, in considering the Act of 1801, which superseded the 13th and 27th Elizabeth, said: "It is more reasonable to suppose that the Legislature

intended to provide that voluntary conveyances, whether of realty or personalty, should not be presumptively fraudulent either as to subsequent creditors or purchasers, if such conveyances were acknowledged or proven and registered according to law, leaving the question of actual fraud in the execution of the conveyance an open question, to be determined by the facts.''

Again, in *White* v. *Bettis & Capps*, 9 Heis., 645, this Court said, viz.: ''The creditors are conclusively presumed to have had notice of the conveyance by registration, and afterwards to have credited Bettis & Capps, not upon the faith at all of the property conveyed, but upon the faith of their honesty or of the individual or firm ability to pay from other sources.'' 2 Beach Mod. Eq. Jur., Sec. 918; *Wallace* v. *Penfield*, 106 U. S., 260–262; *Bullett* v. *Taylor*, 69 Am. Dec., 412.

As opposed to the principles announced in these cases, we are referred to the cases of *Churchill* v. *Wells*, 7 Cold., 364, and *Levering* v. *Norvell*, 9 Bax., 176. In *Churchill* v. *Wells*, the Court expressly approved the principle announced in *Martin* v. *Oliver*, 9 Hum., 561, in respect of the effect of registration, and stated it was applicable to every case wherein the creditor, at the time he extends the credit, knows, or is bound to ascertain, the actual condition of his debtor's estate. The Court, however, differentiated the two cases, and adjudged the voluntary conveyance in the latter case fraudulent in fact,

both as to existing and subsequent creditors. In *Levering* v. *Norvell*, 9 Bax., 176, it was held registration of the instrument was not conclusive, for the reason that the creditor resided out of the State, had previously extended credit to the firm upon his faith in the property of the one member, and had been misled by the positive assurance so shortly before given by the latter, that all his property was in his own name and should so remain during life, and be· subject to his debts. The Court held the conveyance fraudulent in fact. The case of *Trezevant* v. *Terrell*, 12 Pick., 528, also cited by counsel for complainants, was an attack made by antecedent creditors upon a voluntary conveyance, in which the effect of actual or constructive notice to subsequent creditors was not considered. These cases are not controlling in the present case, for the reason that we find an entirely different state of facts upon this record. No fraud in fact is shown towards any of these complainants who are subsequent creditors.

If it be conceded that the presumption of fraud, arising as to creditors whose debts were in existence at the date of this voluntary conveyance, has not been rebutted, there being no actual fraud as to the subsequent creditors, and the conveyance having been registered before his credit was extended, he has no foothold for an attack upon the conveyance. This precise question arose, and was elaborately argued, in *Spence* v. *Dunlap*, 6 Lea, but was not decided, the case going off on other points. Judge McFarland,

in delivering the opinion of the Court in that case, said, viz.: "Assuming that the presumption of fraud as to existing creditors is not rebutted, yet, if it appears that the debt of the subsequent creditor was created with full knowledge of the existing voluntary conveyance, either by registration or actual knowledge, and especially if he advance his money upon the faith of the specific lien or mortgage on other property, can he then have relief against the voluntary conveyance? "

The answer of Judge McFarland to the proposition indicates the opinion of that eminent jurist, viz.: "There is strong authority, supported by apparently sound reason, for repelling the complainant on this ground, but regarding the reasons already stated as conclusive, we need go no further."

We concur in this opinion, and hold that if the creditor had notice, actual or constructive, of the conveyance at the time the debt was contracted, and there was no actual fraud practiced on him, the conveyance will be valid as to him, although existing creditors remain unpaid, and the conveyance as to them be fraudulent. Bump on Fraudulent Con. (4th Ed.), Sec. 300, and authorities cited.

It is not necessary to dispose of other questions, so ably presented at the bar. Suffice it to say, we are satisfied the conveyance from Vanden to his wife was made in the utmost good faith. The proof is that at least $1,000 of the consideration originally paid for this property was money belonging

to Mrs. Vanden, and that it was so used under an agreement to purchase her a home. The fact that the husband took title to himself, and waited many years before conveying it to his wife, did not destroy the strong equity in favor 'of the wife to have the original agreement executed, especially as we find no fact or circumstance in the record indicating that she had relinquished to her husband her interest in the property.

The decree of the Chancellor is affirmed.