Long v. True.

R. F. LONG *v.* H. C. TRUE *et al.*

(*Nashville.* December Term, 1923.)

1. **FRAUDULENT CONVEYANCES.** Judgment creditor with knowledge held not entitled to payment of judgment. •

Where complainant knew of a fraudulent conveyance by defendant L. to codefendant T. to defraud L.'s creditors, and assisted L. in the transaction, complainant was not entitled as judgment creditor of L. to reach funds owing from T. to L. under the transaction, and to subject those funds to complainant's judgment against L., especially where complainant's judgment was subsequent to the conveyance. (*Post, pp.* 680-685.)

Cases cited and approved: Nelson v. Vanden, 99 Tenn., 224; Kid v. Mitchell, 1 Nott. & McC., 334; Howard v. Williams, 1 Bailey, 575; Lehmberg v. Biberstein, 51 Tex., 457; Monroe v. Smith, 79 Pa., 459; Fowler v. Stoneum, 11 Tex., 478; Lewis v. Simon, 72 Tex 470; Baker v. Gilman, 52 Barb., 39; De Garca v. Galvan, 55 Tex., 53; Bullitt v. Taylor, 34 Miss., 708.

2. **FRAUDULENT CONVEYANCES.** Judgment creditor held not entitled to reach funds of attorney due debtor, on ground of attorney's breach of professional duty towards judgment debtor.

Where defendant L. made fraudulent conveyance of his lands to codefendant T., an attorney, because L. believed T., who was his legal adviser, was his friend and would protect him and hold the lands for his benefit, *held*, that the transaction was not of a professional character between attorney and client, and complainant, a judgment creditor of L, but who knew of the fraudulent transaction in advance, was not entitled on ground of T.'s alleged breach of professional duty to reach the funds owing to L. by T. (*Post, pp* 685, 686.)

FROM ROBERTSON. •

149 Tenn.—43.

---

Long v. True.

---

Appeal from the Chancery Court of Robertson County. —HON. J. W. STOUT, Chancellor.

PARKS & BELL and R. L. PECK, for appellant.

A. L. DORSEY, for appellees.

MR. JUSTICE HALL delivered the opinion of the Court.

The bill in this cause was filed by the complainant, R. F. Long, who alleges that he is a judgment creditor of his father, E. B. Long, against the defendants, and particularly defendant H. C. True, to reach certain funds in the hands of said True, and have them subjected to the satisfaction of a judgment obtained against the said E. B. Long.

The predicate of the bill is that True is the fraudulent grantee of E. B. Long, who voluntarily and without consideration, and for the purpose of putting said property beyond the reach of his creditors, on September 26, 1913, conveyed to defendant True certain lands situated in Robertson county, Tenn., and that True afterwards conveyed said property to others, and now has in his hands a portion of the proceeds, amounting to the sum of $5,200. The bill alleges:

That E. B. Long, the father of complainant, with a view of avoiding payment of certain debts which he owed to creditors in the State of Texas, conveyed to defendant True the lands in Robertson county for the recited consideration of $11,680. That Long, though advised by True to do so, hesitated for a long time to make said conveyance to him, but upon the assurance of True that he could and would hold the title to said lands for him so as to

prevent the Texas creditors from reaching them, and upon True's continuous and urgent advice to do so, Long, finally made the conveyance to him, but with the distinct understanding that, when said lands should be. sold, the the proceeds of sale were to be turned over to him (Long), and that Long retained possession of said lands from the date of the conveyance to True until the same were sold by True.

That, pending the execution of the deed to True, E. B. Long conferred with his wife and son, complainant, R. F. Long, as to the advisability of executing the deed to True, and that both his said wife and son advised him not to deed the lands to True, but advised him to sell the lands to his father, John R. Long, to pay him the debts that he was E. B. Long's surety for in Robertson county. That, however, E. B. Long was dissuaded from this by True, and, as stated above, was induced by True to convey the lands to him. That at the time of said conveyance, and for many years prior thereto, True was the attorney and confidential advisor of E. B. Long, and the latter spent a great deal of time in True's office, practically making the same his headquarters That E. B. Long had the utmost confidence in True, and, believing that he would keep faith with him in the matter, he deeded said lands to him, True all the time representing to Long that he could and would take care of him, treat him right in the matter, and carry out his agreement with him to the letter.

That E. B. Long, wishing to realize on his lands, approached True on the subject of a sale of the same, when True said to Long: "If you will find purchasers for the lands, I will execute deeds to them, and turn the proceeds over to you." E. B. Long thereupon found purchasers in

the persons of his three brothers-in-law, and applied to True with a view of having him execute deeds to said purchasers, which he did, and received the purchase price for said lands. That, instead of turning the proceeds over to E. B. Long, as he had solemnly agreed to do, True deposited the money in the bank to his own credit, and began using the same for his own individual purposes. That E. B. Long learned of this, and immediately went to True, and demanded that he turn the money over to him in accordance with their agreement, which he refused to do, assigning as a reason therefor that the transaction was being "watched," and if it were found out that the purchase price had been turned over to him (E. B. Long) the whole matter would be attacked for fraud. That finally, on November 22, 1917, True made what he termed a settlement of the matter by delivering to E. B. Long a note of $1,800 executed by Long to J. G. Woodard, which note True had taken as part payment for the lands, and also a note of $7,000, executed to his own order, and indorsed by him, and due one year after date with interest. That, while E. B. Long accepted said two notes, he did not take same as a settlement in full of the amount due him, but kept constantly after True to pay him the balance of the amount received for the lands. That, after the execution of the said $7,000 note, True paid $500 on the same on November 30, 1917, and stated that he would make rapid payments thereon until the same was paid in full. That, however, E. B. Long, being pressed for money, sold and transferred said note to the People's Bank of Springfield, using the proceeds thereof in paying certain local creditors.

That on June 8, 1918, True paid $1,000 more on said $7,000 note, and after the note became due the bank

brought suit on said note against True in the chancery court of Robertson county.

True answered the bill, and filed a cross-bill on March 4, 1919, in which he denied that Long was entitled to the proceeds of said note, and averred that the lands were his, and that Long had executed the deed to him in settlement of a debt of $10,200 and interest, growing out of certain Texas land transactions, and that the $7,000 note, executed as aforesaid, was a sham, was never intended to be paid, and that he was entitled to have the same canceled and delivered up to him.

In that suit, however, the chancellor held against True's contention, and rendered a decree in favor of the bank against True for the balance of the note and interest. From the decree True appealed to this court, when and where the decree of the chancellor was affirmed; the case being reported in 144 Tenn., 171, 231 S. W., 541.

That after the trial of said cause of *People's Bank of Springfield* v. *H. C. True* in the chancery court of Robertson county, and pending the appeal to the supreme court, and after True had repudiated his agreement with E. B. Long to turn over to him the proceeds of said lands, the complainant R. F. Long, having acquired claims against his said father, brought suit in the chancery court of Robertson county against him in January 1920, and recovered a decree on said claims in the sum of $7,601.07; and that thereafter, to-wit, on the 25th day of March, 1920, execution issued on said decree, and the same was returned *nulla bona*. Thereupon the said R. F. Long, as said judgment creditor of his father, E. B. Long, brought the present suit to recover of the defendant True the remainder of the purchase price of said lands, to-wit, $5,200

and interest, and have the same applied to the satisfaction of his said judgment against E. B. Long.

Answers were filed by the various defendants, and defendant True in his answer averred that the lands conveyed to him by E. B. Long were his; that he had paid for them; that his associates in certain Texas land transactions, of which E. B. Long was one, owed him, in September 1913, more than $10,000, and that E. B. Long assumed this entire indebtedness for their associates and conveyed to him (True) said Robertson county lands in satisfaction of said indebtedness, and that said conveyance was therefore for a valuable consideration, and was made and accepted in good faith.

Upon this issue a large volume of evidence was taken in the cause, and the evidence taken in the cause of *People's Bank of Springfield* v. *H. C. True* was considered by the chancellor in the trial of the present cause, and is now before this court for consideration in the present cause.

On the hearing the chancellor held and decreed:

That the conveyance made by E. B. Long to defendant True on September 26, 1913, of the Robertson county lands was made at a time when he (E. B. Long) was indebted, along with other persons in Robertson county, to the extent of several hundred thousand dollars growing out of land transactions in the State of Texas, which was past due, and on which, or a part of which, judgments had been rendered. That neither the said E. B. Long, or said other persons owing said indebtedness with him, could pay said indebtedness, and that said E. B. Long did not desire that his lands in Robertson county be subjected to the payment of such indebtedness. That he discussed his condi-

tion with his son, the complainant, R. F. Long, and was advised by his said son to make a conveyance of said lands for the fraudulent purpose of defeating said creditors in the collection of their claims, but his said son advised him to convey said lands to some other person than the defendant H. C. True; but that the said E. B. Long, however, decided that he would make a fraudulent conveyance of said lands to the defendant True, and did, on September 26, 1913, convey them to True for the fraudulent purpose of defeating his said creditors in the collection of their indebtedness against him.

That the defendant H. C. True sold said lands, and gave to the said E. B. Long a note for $7,000, and another note which the said E. B. Long owed with his father, J. R. Long, as surety thereon, amounting in all to $8,800 of said proceeds of sale of said lands by True, paid by the said True to the said E. B. Long while the said H. C. True received $14,000 for said lands, thus leaving $5,200 of the proceeds of sale of said lands in the hands of defendant True.

That thereafter complainant, R. F. Long, bought up certain claims against his father, E. B. Long, which had been in existence for many years, and which were secured by J. R. Long, the father of said E. B. Long, and which the said J. R. Long, now deceased, provided in his last will and testament should be paid out of his (the said J. R. Long's) estate. That neither the said J. R. Long nor the owners of said claims had ever at any time called in question the said conveyance by E. B. Long to defendant True, or taken any steps to set the same aside. That the said R. F. Long, on January 7, 1920, filed his original bill in the chancery court against his father to recover a decree

against him on said claims. That said bill did not pray
for process, but the said E. B. Long promptly answered
said bill, and admitted that he owed complainant, R. F.
Long, said claims, and on January 13, 1920, R. F. Long
recovered a decree against the said E. B. Long on said
claims for the amount, including interest and attorneys'
fees, of $7,621.07, and costs of suit.

The further material features of the chancellor's decree
are that the conveyance of the Robertson county lands by
E. B. Long to defendant True was fraudulent, and was
made for the purpose of defeating his creditors in the col-
lection of their debts; that the complainant, R. F. Long,
counseled and advised with his father, E. B. Long, to make
such disposition of his said lands; that the said R. F.
Long stands on no higher ground than his said father;
and that his father would not, being guilty of fraud in
making said conveyance to True, be entitled to any re-
lief in a court of equity; and that his son, the complainant
having counseled and advised his father to make fraudu-
lent disposition of his lands, cannot maintain the present
bill, and is not entitled to any relief, and the bill was
therefore dismissed, with costs against complainant.

From this decree complainant, R. F. Long, has appealed
and assigned errors.

We are of the opinion, after a careful examination of
the record and the law governing the questions involved,
that complainant cannot recover of defendant True, even
though it be conceded that the conveyance from E. B.
Long to defendant True of the Robertson county lands
was fraudulent and made for the sole purpose of defeat-
ing E. B. Long's Texas creditors in the collection of their
debts, as both E. B. Long and his son, the complainant,

R. F. Long, say it was.  The undisputed proof shows that said conveyance was made by E. B. Long to defendant True with the full knowledge of complainant, R. F. Long, as to its fraudulent character.  R. F. Long frankly admits in his testimony that his father, E. B. Long, disclosed his financial condition to him prior to making said conveyance, and discussed with him the advisability of making a conveyance of his Robertson county lands to defendant True with a view and for the purpose of putting them beyond the reach of his Texas creditors, and to defeat them in the collection of the indebtedness which he (E. B. Long) owed them.  Both R. F. Long and E. B. Long say that R. F. Long advised his father not to make said conveyance to defendant True, but that R. F. Long advised him to make a conveyance of said lands to his (E. B. Long's) father for the purpose of paying certain debts which E. B. Long owed to Robertson county creditors, and for which his father, J. R. Long, was surety, and the payment of which debts the said J. R. Long had provided for in his will; but that E. B. Long, over the advise of complaintiff R. F. Long, made a voluntary conveyance of said lands to defendant True, of which R. F. Long had full knowledge.

R. F. Long frankly admitted in his deposition that, after said conveyance was made by his father to defendant, True, he assisted them in arranging an account with the People's Bank of Springfield, of which he was cashier at the time, in the name of E. B. Long, agent, to make the transaction look genuine and straight, and to carry out the scheme which E. B. Long and defendant True had entered into.; it being agreed between E. B. Long and defendant True that E. B. Long was to remain in possession

of the Robertson county lands, collect the rents and profits from same, and deposit them in the People's Bank of Springfield to the credit of E. B. Long, as agent of defendant True. As to this, complainant, R. F. Long, testified as follows:

"A. I assisted him only in this way—my father came to me and stated that True told him that he would have to have an account in the People's Bank or somewhere as agent to make this transaction over here look genuine, and to carry out the scheme that True had started, and I filled out a note for $300, and True signed it, and put the money to my father's credit as agent; I did it myself, and True never paid the note either, it wasn't supposed to be paid, and wasn't paid; just a scheme to carry out his plan, as I told you before and in other depositions.

"Q. To whom was the note payable?

"A. It was payable to me to the best of my recollection.

"Q. Who furnished the money that went to the credit of the agent's account?

"A. I did myself; this note was never not anywhere else; I held it myself; just as I have furnished other money to help my father out; and I wouldn't do this until he assured me that True had nothing to do with it and wouldn't get any of it.

"Q. This agent account was one opened up in the said People's Bank in the name of E. B. Long, agent, and, as I understand you, was a part and parcel of the scheme for handling these lands, that is the operation of them that your father had deeded to True?

"A. It wasn't a thing in the world but just a plan that True had outlined for my father that would be necessary to make this land transaction look genuine to make it show that way; that was all there was."

The undisputed evidence further shows that E. B. Long was not indebted to his son, that complainant, R. F. Long, at the time he made the conveyance to True, but after said conveyance was made, and with full knowledge of its fraudulent character, complainant, R. F. Long, acquired or purchased the three notes upon which he afterwards recovered a decree against his father in the chancery court for $7,621.07. It therefore appears that said R. F. Long was not an existing creditor at the time of the conveyance to True by his father, but acquired said three notes with full knowledge of the fraudulent character of the conveyance by his father to True, and it is to satisfy a decree rendered in his favor against his father on these notes that he brings the present action to recover of True the remainder of the proceeds of the Robertson county lands fraudulently conveyed by his father to True with his knowledge.

It was held by this court in *Nelson* v. *Vanden,* 99 Tenn., 224, 42 S. W., 5, that a voluntary conveyance is valid as to a subsequent creditor who had actual or constructive notice of the conveyance when the debt was contracted, and no actual fraud was practiced upon him, although existing creditors remained unpaid, and the conveyance is fraudulent as to them. This case distinguishes the earlier cases in which it was held that, if a voluntary conveyance is made with the intent to defraud existing creditors it will, in general, be held void as to subsequent creditors.

In 12 R. C. L., page 487, section 28, it is said:

"But the better rule is that creditors who contract debts under such circumstances that the knowledge of previous voluntary transfers must be imputed to them cannot be

regarded as hindered, delayed, or defrauded by such transfers, and therefore cannot avoid them for the purpose of obtaining collection of their debts."

To the same effect is the holding of the court in *Kid* v. *Mitchell*, 1 Nott & McC. (S. C.) 334, 9 Am. Dec. 702; *Howard* v. *Williams*, 1 Bailey (S. C.) 575, 21 Am. Dec., 483.

In a note on page 751 of volume 14 of American State Reports it is said:

"The grantor in a voluntary deed may part with all possession and dominion over the property, or, when it is real estate, the grantee may cause the conveyance to be recorded, and thereby impart notice of its existence to all subsequent purchasers and creditors of the grantor. In either event, all subsequent creditors of the grantor have notice of his existing financial condition. They have no reason to expect that the property which has thus been transferred can be made available to them for the satisfaction of their debts. Knowing that the debtor no longer has this property, they may contract with him or not, as they may think best, in view of his apparent financial condition. It is difficult, therefore, to understand how they can be defrauded by the prior transfer of which they are thus notified. It has been said that if they have notice of the transfer, they also have notice that it was fraudulent as against pre-existing creditors, and that it is therefore void, and that they may therefore go on contracting with the grantor upon the assumption that the apparent conveyance is in fact no conveyance at all, because it was fraudulent and void in its inception. But the better rule, we think, is, that creditors who contract debts under such circumstances that the knowledge of previous voluntary

transfers must be imputed to them cannot be regarded as hindered, delayed, or defrauded by such transfers, and therefore cannot avoid them for the purpose of obtaining collection of their debts"—citing *Lehmberg* v. *Biberstein,* 51 Tex., 457; *Monroe* v. *Smith,* 79 Pa., 459; *Fowler* v. *Stoneum,* 11 Tex., 478, 62 Am. Dec., 490; *Lewis* v. *Simon,* 72 Tex., 470, 10 S. W., 554; *Baker* v. *Gilman,* 52 Barb., (N. Y.), 39; *De Garca* v. *Galvan,* 55 Tex., 53; *Bullitt* v. *Taylor,* 34 Miss., 708, 69 Am. Dec. 412.

We have examined these cases, and find that they support the rule stated in the note above quoted.

Reference is made in the brief of counsel for complainant to several cases bearing on the duty of an attorney toward his client in professional matters, which hold that an attorney is bound in law to act with honesty and fairness toward his client, as the relation of attorney and client is one of great delicacy and extremely fiduciary in its character.

We have examined these cases, and find that they have no application to the questions under consideration here. They relate to contracts for professional services between attorney and client. It is true that defendant True had been the attorney of E. B. Long and represented him in legal matters. The conveyance, however, by Long to True of his Robertson county lands was not a transaction of a professional nature, nor does the evidence show that True overreached Long in the matter. Long was a man of intelligence and wide experience in business affairs, and fully understood what he was doing. According to his own evidence he had deliberately formed a purpose to make a fraudulent conveyance of his lands to some one, if not to True, for the purpose of defeating his Texas cred-

itors.   He made the conveyance to True, because he be-lieved True was his friend and would protect him and hold the lands for his benefit.   There is therefore no merit in complainant's contention that he is entitled to recover the remainder of the proceeds of the sale of said lands now in True's hands on the ground that True breached his professional duty and obligation.

The chancellor, therefore, properly dismissed complain-ant's bill, and his decree is affirmed, with costs.