**In re Melissa Ann Mullins TURNER, Debtor.**

**Bankruptcy No. 1–85–01649.**

United States Bankruptcy Court,
E.D. Tennessee.

July 2, 1987.

Thomas H. Copeland, of Copeland, Conley & Hazard, Tullahoma, Tenn., for Traders Nat. Bank.

Frank Van Cleave, of Ray & Van Cleave, Tullahoma, Tenn., for trustee C. Kenneth Still.

## MEMORANDUM

RALPH H. KELLEY, Chief Judge.

The trustee in bankruptcy in the case of Melissa Turner seeks to avoid the lien of Traders National Bank (Traders) on real property owned by Mrs. Turner. The facts are as follows.

Mrs. Turner and her husband, Charles N. Turner, were the joint owners of a house and land located in Winchester, Tennessee. Mr. Turner was president of First Bank & Trust Company of Tracy City, Tennessee. In the spring of 1981, Mr. Turner deeded his interest in the property to Mrs. Turner. She then executed an open-ended deed of trust of the property to Mr. Turner's bank. The deed of trust provided that it would secure any notes that Mrs. Turner executed to her husband's bank at various times up to a total of $250,000. Mr. Turner's deed to Mrs. Turner and her deed of trust to Mr. Turner's bank were duly recorded.

In the summer of 1982, Mr. Turner owed Traders an unsecured note for $100,000 and a secured note for $200,000. Both notes came due. Mr. Turner had pledged stock in his bank as collateral for the $200,000 note. He wanted the stock back. He talked to the president of Traders, Bennie Garrick, about setting up a payment schedule and getting the bank stock released. Mr. Garrick understood that Mr. Turner wanted the bank stock because his bank was obtaining a holding company loan or forming a holding company or both combined. Mr. Turner proposed to substitute as collateral for the $200,000 note the open-ended deed of trust that Mrs. Turner had given to his bank.

The deed of trust did not belong to Mr. Turner. It belonged to his bank. But Traders agreed to assignment of the deed of trust as collateral for Mr. Turner's personal debts. The assignment referred to a deed of trust and a note. Traders' president didn't recall receiving any notes that Mrs. Turner owed to Mr. Turner's bank. He didn't talk to anyone at Mr. Turner's bank, other than Mr. Turner, about obtaining the deed of trust. He didn't ask for a pay-off amount. Traders did not pay any-

thing directly to Mr. Turner's bank in return for the assignment.

The proof did not show whether Mrs. Turner ever owed any debts to Mr. Turner's bank which were secured by the deed of trust. The bank ultimately failed and the Federal Deposit Insurance Corporation stepped in as receiver or liquidator. The notes that the FDIC found were executed by Mrs. Turner after the deed of trust had been assigned to Traders.

Mrs. Turner executed a note to Traders for $250,000—the full amount that could be secured by the assigned deed of trust. The $250,000 was credited to Mr. Turner's debts. The $200,000 secured debt was paid in full and the bank stock released to Mr. Turner. The remaining $50,000 was applied to the $100,000 unsecured debt. Mr. Turner guaranteed payment of Mrs. Turner's $250,000 debt. The guaranty refers to the assigned deed of trust as collateral.

Mr. Turner remained liable for the $50,-000 of unsecured debt that was not rolled into Mrs. Turner's $250,000 note. He gave Traders a security interest in a Mercedes-Benz automobile to secure the $50,000.

This took place in the late summer of 1982. The assignment of the deed of trust was recorded then and again in mid–1983. Mrs. Turner did not file her petition in bankruptcy until September, 1985.

### Discussion

The validity of Mr. Turner's deed to Mrs. Turner has not been called into question. The court can treat the deed as validly making Mrs. Turner the sole owner of the property.

■ The trustee cannot avoid the deed of trust, the assignment, or Mrs. Turner's note to Traders under Bankruptcy Code § 547 or § 548 because they do not apply to transfers made or obligations incurred more than a year before Mrs. Turner's bankruptcy. 11 U.S.C. §§ 547(b)(4) & 548(a).

This leaves the trustee with the possibility of avoiding the assignment of the deed of trust or Mrs. Turner's note to Traders under Bankruptcy Code § 544(a) and state law. The court begins with subsections (a)(1) and (a)(2). They give the trustee the rights under Tennessee law of a person who became a creditor of Mrs. Turner and perfected a judgment lien on her property at the time she filed her bankruptcy petition. 11 U.S.C. § 544(a)(1) & (2). The question, then, is whether a person who became a creditor of Mrs. Turner subsequent to the assignment and execution of the note can avoid either. See *Havee v. Belk*, 775 F.2d 1209, 1218–19 (4th Cir.1985); *In re Louisiana Indus. Coatings, Inc.*, 31 B.R. 688 (Bankr.E.D.La.1983).

The Tennessee statutes on fraudulent conveyances can be divided into two groups—the statutes that require proof of actual intent to hinder, delay, or defraud creditors and the constructive fraud statutes that do not require proof of actual intent to hinder, delay, or defraud creditors.

■ The constructive fraud statutes allow creditors to avoid transfers made or debts incurred by a debtor without receiving fair consideration in return. Tenn.Code Ann. § 66–3–304. Mrs. Turner did not receive any consideration for executing the $250,000 note to Traders to refinance her husband's debts. It is questionable whether the assignment of the deed of trust can be treated as a transfer by Mrs. Turner of an interest in her property, but for the moment the court assumes this is not a problem. Mrs. Turner also received no consideration for the assignment. However, the trustee must prove more than lack of consideration in order to recover under the constructive fraud statutes.

The first constructive fraud statute requires proof that the debtor was insolvent at the time the transfer was made or the debt incurred. Tenn.Code Ann. § 66–3–305. The second constructive fraud statute requires proof that (1) the debtor was engaged in or about to engage in business or a transaction for which her capital remaining after the transfer was unreasonably small and (2) the complaining creditor became a creditor during the continuance of the business or transaction. Tenn.Code Ann. § 66–3–306. The third constructive fraud statute requires proof

that the transfer was made or the debt incurred by a debtor when she intended or believed that she would incur debts beyond her ability to pay as they matured. Tenn. Code Ann. § 66–3–307.

Since the trustee is a subsequent creditor, he may not be in the class of creditors protected by the first and second constructive fraud statutes. He clearly qualifies under the third statute. In any event, the trustee did not prove (1) that Mrs. Turner was insolvent when the deed of trust was assigned or when she executed the note to Traders, or (2) that she was engaged in or about to engage in business or a transaction for which her remaining capital was unreasonably small, or (3) that she intended or believed she would incur debts beyond her ability to pay as they matured. Thus, the trustee cannot recover under the constructive fraud statutes. See *In re Good Time Charley's, Inc.*, 54 B.R. 157 (Bankr. D.N.J.1984).

█ Tennessee has two statutes that allow creditors to avoid transfers made or debts incurred by a debtor with actual intent to hinder, delay, or defraud creditors. The newer of the two statutes is part of the Uniform Fraudulent Conveyance Act, which includes the constructive fraud statutes already discussed. It provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud, either present or future creditors, is fraudulent as to both present and future creditors. Tenn.Code Ann. § 66–3–308.

The older statute is an adaptation of British statutes that were adopted in North Carolina and continued in Tennessee when it became a separate state. *Laird v. Scott*, 52 Tenn. 314 (1871).

It provides:

> Every gift, grant, conveyance of lands, tenements, heriditaments, goods, or chattels, or of any rent, common or profit out of the same, by writing or otherwise ... had or made and contrived, of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, forfeitures; or to defraud or deceive those who shall purchase the same lands, tenements, or hereditaments, or any rent, profit, or commodity out of them, shall be deemed and taken, only as against the person, his heirs, successors, executors, administrators, and assigns, whose debts, suits demands, estates, or interest, by such guileful and covinous practices as aforesaid, shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void; any pretense, color, feigned consideration, expressing of use, of any other matter or thing, to the contrary notwithstanding. Tenn.Code Ann. § 66–3–101.

These statutes do not specifically mention transfers for less than fair consideration, but many of the decided cases involve such transfers. The courts have used the term "voluntary" to describe a transfer by a debtor to, or for the benefit of, a family member for no consideration or for love and affection, which is treated as no consideration because it has no value to creditors. *Laird v. Scott*, 52 Tenn. 314 (1871); *Bowery v. Vines*, 178 Tenn. 98, 156 S.W.2d 395 (1941).

As to existing creditors, a voluntary transfer is presumed fraudulent and is avoidable unless the debtor proves that her financial condition was such that the transfer did not have the effect of hindering or delaying creditors. A subsequent creditor does not have the benefit of this presumption unless it is relying on the rights of an existing creditor. 13 Tenn.Jur., Fraudulent & Voluntary Conveyances §§ 14 & 49 (1984). Since the trustee is a subsequent creditor under § 544(a), he does not have the benefit of the presumption. He had the burden of proving Mrs. Turner's financial condition or prospects.

Proof of financial condition or prospects may be proof that the debtor was insolvent, or proof that the debtor was solvent but conveyed away the property most valuable and accessible to creditors, or proof that the debtor retained property of unreasonably small value compared to her debts, or proof that the debtor expected to incur

debts beyond her ability to pay, etc. *Bowery v. Vines*, 178 Tenn. 98, 156 S.W.2d 395 (1941) (transfer for spouse's benefit); *Nelson v. Vanden*, 99 Tenn. 224, 42 S.W. 5 (1897); *State v. Nashville Trust Co.*, 28 Tenn.App. 388, 190 S.W.2d 785 (1944); *Carpenter v. Scales*, 48 S.W. 249 (Tenn.Ch. App.1897); 13 Tenn.Jur., Fraudulent & Voluntary Conveyances § 14 (1984).

The trustee failed to prove anything about Mrs. Turner's financial condition or prospects at the time of the assignment and execution of the note. As a result, he cannot recover as a subsequent creditor.

Furthermore, generalized proof of Mrs. Turner's financial condition and prospects at the time of the assignment and execution of the note would not be sufficient to allow the trustee to recover, because the recording of the deed of trust and the assignment gave a subsequent creditor, such as the trustee, constructive notice of the transfer when he became a creditor. Compare *Nelson v. Vanden*, 99 Tenn. 224, 42 S.W. 5 (1897) and *Churchill v. Wells*, 47 Tenn. 364 (1870); See 13 Tenn. Jur., Fraudulent & Voluntary Conveyances § 14 at 336–337 (1984).

In summary, the trustee cannot recover under Tennessee law as a subsequent creditor under Bankruptcy Code § 544(a)(1) and (2).

The Bankruptcy Code also gives the trustee the rights of a subsequent bona fide purchaser of real estate from the debtor. 11 U.S.C. § 544(a)(3). The trustee has not asserted any ground for avoiding the note or the assignment except fraud, which has not been proven. Furthermore, the constructive notice given by the recorded deed of trust and assignment has the same effect on the trustee's rights as a subsequent bona fide purchaser that it had on his rights as a subsequent creditor. It prevents recovery. 13 Tenn.Jur., Fraudulent & Voluntary Conveyances § 14 (1984).

Finally, § 544(b) is the last possible bankruptcy statute under which the trustee might recover. 11 U.S.C. § 544(b). It allows the trustee to assume the power of an actual creditor to avoid a transfer made or a debt incurred by the debtor. The presumption under Tennessee law that a voluntary conveyance is fraudulent to existing creditors makes § 544(b) a powerful weapon for avoiding a transfer for inadequate consideration *provided* there is a creditor at the time of bankruptcy who was a creditor when the transfer occurred. The trustee has not pointed out any such creditor on whose rights he relies. Mr. Turner's bank apparently was not a creditor of Mrs. Turner when the deed of trust was assigned. There was a first mortgagee, but it could not avoid the transfer of the deed of trust or the execution of the note because it was not prejudiced by either. *Marsh v. Galbraith*, 31 Tenn.App. 482, 216 S.W.2d 968 (1948). Thus, there was no proof of an actual existing creditor who could avoid the assignment or the note.

The court has already held that the trustee as a hypothetical subsequent creditor under § 544(a)(1) and (2) cannot recover. He has not pointed out any actual subsequent creditor with greater rights under Tennessee law than he had as a hypothetical subsequent creditor.

Traders argues that the trustee is trying to avoid the assignment on the ground that it was fraudulent as to Mr. Turner's bank as owner of the deed of trust or was fraudulent as to creditors of Mr. Turner's bank. Section 544(b) might not allow the trustee to assume these rights. In any event, the trustee did not show that the assignment was fraudulent as to Mr. Turner's bank or its creditors. The release of Mr. Turner's stock may have been adequate consideration to his bank, if it needed the stock and would have had to buy it back from Mr. Turner.

The trustee's final argument is based on the terms of the deed of trust. The printed form contains the usual provision that the deed of trust will become ineffective when the secured debts are paid in full. The trustee argues that this provision rendered the deed of trust ineffective when it was assigned because Mrs. Turner didn't owe any debts to Mr. Turner's bank and her debt to Traders could not have

been secured by the deed of trust before assignment.

The provision that made the deed of trust open-ended was typed. It was intended to keep the deed of trust effective when Mrs. Turner did not owe any debts and even if she had previously borrowed and repaid the maximum that could be secured. In this respect, the typed provision is contrary to the printed provision on which the trustee relies. The typed provision should prevail. *Tindell v. Bowers*, 31 Tenn.App. 474, 216 S.W.2d 752 (1948). This means the deed of trust was effective for the benefit of Mr. Turner's bank at the time of the assignment without regard to whether Mrs. Turner at that moment owed any debts that were secured by the deed of trust.

Assignment of an open-ended deed of trust that does not at the time secure any debts does not make sense unless the assignee intends to lend and the owner of the land intends to borrow from the assignee. That is not a problem in this case. Mrs. Turner took part in the transaction with the commitment from Traders to lend her $250,000 to be secured by the assigned deed of trust.

Since the assignment of the deed of trust was effective, the trustee cannot recover on this ground.

The court will enter an order granting judgment for the defendant, Traders Bank.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.